**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2012-CT-00159-SCT**

*DONALD KEITH SMITH a/k/a DONALD SMITH*
*a/k/a DONALD K. SMITH*

*v.*

*STATE OF MISSISSIPPI*

<u>**ON WRIT OF CERTIORARI**</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2012 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD KEITH SMITH (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 10/30/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**CONSOLIDATED WITH**

**NO. 2012-CT-00926-SCT**

*DONALD KEITH SMITH a/k/a DONALD SMITH*
*a/k/a DONALD K. SMITH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/25/2012 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD KEITH SMITH (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |

NATURE OF THE CASE:        CIVIL - POST-CONVICTION RELIEF
DISPOSITION:             REVERSED AND REMANDED - 10/30/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    Under Uniform Rule of Circuit and County Court Practice 9.06, a mental evaluation and competency hearing are mandatory if the trial court has a reasonable ground to believe the defendant is incompetent to stand trial. URCCC 9.06. Before Donald Keith Smith entered a guilty plea in the Circuit Court of Jackson County, the trial court ordered a mental evaluation of Smith that never was performed. The record is silent as to the reason the trial court ordered the mental evaluation. We granted Smith's petition for certiorari on his post-conviction claim that the trial court had erred by accepting his guilty plea without a completed mental evaluation and competency hearing. Because a mental evaluation and hearing were required if the trial court ordered the mental evaluation to assess Smith's competence to stand trial, we reverse and remand for an evidentiary hearing on the issue of why the trial court ordered a mental evaluation.

**FACTS**

¶2.    Smith was indicted for two counts of kidnapping, one count of armed carjacking, and one count of felony evading a police officer. The record reveals the following concerning the trial court's order of a mental evaluation for Smith. His case was set for trial on November 13, 2008. On that date, Smith orally moved for a continuance and a psychiatric examination.

2

Because the proceedings before the trial court were not transcribed, the grounds for the motion are not in the record. The court granted the motion and ordered "that Defendant be examined by some competent psychiatrist(s) for a determination of Defendant's mental and/or psychiatric condition." The order contained no explanation of the reason for the mental evaluation. The order continued the trial "until a psychiatric evaluation can be conducted and a report generated." The same day, the trial court entered an agreed order of continuance that stated "Defendant is to undergo a psychiatric evaluation at his own expense and the parties need additional time for plea negotiations." The agreed order continued the trial until March 3, 2009. On November 21, 2008, the court entered another agreed order granting Smith's motion for a continuance until March 3, 2009, for the purpose of obtaining a mental examination of Smith. On January 29, 2009, an order was entered for Smith to be transferred from the Jackson County Adult Detention Center to the Mississippi State Hospital for evaluation on February 7, 2009.

¶3.    No further information concerning the mental evaluation appears in the record of the guilty-plea proceedings. On March 3, 2009, the trial court entered another agreed order of continuance on the basis of ongoing plea negotiations. Another agreed order of continuance was entered on April 9, 2009, setting a trial date of June 3, 2009. On June 3, 2009, Smith filed a petition to plead guilty to one count of kidnapping, armed carjacking, and felony fleeing. At the plea hearing that day, Smith stated that he had been treated for depression and "psychosis or something like that," and was taking medication for those conditions. The trial court found Smith's guilty plea was knowingly, intelligently, and voluntarily made. The trial court accepted the guilty plea and sentenced Smith according to the State's recommendation:

3

for kidnapping, to thirty years with twelve years suspended and eighteen years to serve, for armed carjacking, to thirty years with twelve years suspended and eighteen years to serve, and for felony fleeing, to five years, with all sentences to run concurrently. The trial court also ordered that Smith be placed in the Therapeutic Community Treatment Program, that he have a full mental-health examination while incarcerated, and that he must take all prescribed medications.

¶4. On December 14, 2011, Smith filed a *pro se* motion for post-conviction relief (PCR), attacking his armed-carjacking conviction. The trial court dismissed the motion for PCR and Smith appealed. He filed a second, successive *pro se* motion for PCR on February 22, 2012, arguing that the trial court had erred by accepting his guilty plea because the mental evaluation ordered by the court never had been performed, and no competency hearing had occurred. In this motion for PCR, Smith averred that it was unclear to him why the mental evaluation never had been performed. He stated that his attorney had told his parents the evaluation would cost $2,000. Smith stated that he was taken to the Mississippi State Hospital on February 7, 2009, but "was promptly returned to jail" after being told that no psychiatrist was available. He argued that the trial court should not have accepted his guilty plea because he was "mentally incompetent to fully understand the proceedings against him." He also argued that his attorney, Victor Carmody, had provided ineffective assistance of counsel by failing to investigate his mental condition and pursue a mental evaluation.

¶5. Smith attached affidavits from his parents. In their affidavits, both parents stated that Smith had been institutionalized numerous times for drug addiction and bipolar disorder, and for self-mutilation after he had slashed his arms with a razor. Smith's father additionally

4

stated that Smith had been prescribed drugs for bipolar disorder. Smith's father stated that Smith had been transported to the Mississippi State Hospital for a mental evaluation, but he was not seen by a doctor and was returned to jail. He averred that Smith's attorney had called him and said it would cost $2,000 for the mental evaluation, but they did not have the money.

¶6.     The trial court dismissed Smith's motion for PCR as successive. *See* Miss. Code Ann. § 99-39-23(6) (Rev. 2007). Alternatively, the trial court held that no competency hearing had been required because the court never had made a finding that reasonable ground existed as to Smith's competency. Smith appealed. This Court assigned both of Smith's appeals to the Court of Appeals, which consolidated them and affirmed the dismissal of the motions for PCR. **Smith v. State**, 2013 WL 3799825, at *8 (Miss. Ct. App. Feb. 18, 2014). Smith filed a *pro se* petition for certiorari, which this Court granted. We limit our review to Smith's claim that, because the trial court ordered a mental evaluation, the court could not accept his guilty plea until a mental evaluation and competency hearing had occurred. M.R.A.P. 17(h).

## STANDARD OF REVIEW

¶7.     The trial court may summarily dismiss a motion for PCR "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief . . . ." Miss. Code Ann. § 99-39-11(2) (Rev. 2007). On appeal from the summary dismissal of a motion for PCR, this Court determines whether the motion presents "a claim procedurally alive 'substantial[ly] showing denial of a state or federal right.'" **Gable v. State**, 748 So. 2d 703, 704 (Miss. 1999).

## ANALYSIS

¶8.     We begin by addressing the trial court's holding that Smith's second motion for PCR

5

was barred as a successive writ. Mississippi Code Section 99-39-23(6) provides that an order dismissing a motion for PCR acts as a bar to a successive motion for PCR. Miss. Code Ann. § 99-39-23(6) (Rev. 2007). However, this Court has held unequivocally that "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." *Rowland v. State*, 42 So. 3d 503, 507 (Miss. 2010). In *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975), the United States Supreme Court held "the prohibition [against trying or convicting an incompetent defendant] is fundamental to an adversary system of justice." The constitutional right not to be tried or convicted while incompetent is a component of a defendant's due-process right to a fair trial. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). Because Smith's second motion for PCR alleges a violation of his fundamental right not to be convicted while incompetent, we will address the merits of his argument.

¶9.     The dissent would eliminate the fundamental-rights exception to the successive-pleadings bar by labeling the bar "substantive" rather than "procedural." But, as the dissent recognizes, the Uniform Post-Conviction Collateral Relief Act contains no substantive *res judicata* bar to a second PCR. Dis. Op. at n.3. This Court consistently has declared that the successive-pleadings bar is a procedural bar. *See, e.g.*, *Rowland v. State*, 98 So. 3d 1032, 1035 (Miss. 2012). And we consistently have recognized an exception to the successive-pleadings bar for errors affecting fundamental rights. *Rowland*, 42 So. 3d at 507-08.

¶10.    To deny relief for a fundamental-rights violation brought to our attention in a successive PCR would ignore the serious due-process concerns underlying the fundamental-rights exception. *Id.* at 507 (citing *Brooks v. State*, 209 Miss. 150, 46 So. 2d 94 (1950)). In

6

recognition of this principle, this Court has on numerous occasions reviewed errors affecting fundamental rights raised by successive pleadings. *Grayson v. State*, 118 So. 3d 118, 125 (Miss. 2013) (ineffective assistance of death-penalty post-conviction counsel); *Jones v. State*, 119 So. 3d 323, 325-26 (Miss. 2013) (illegal sentence); *Rowland*, 98 So. 3d at 1035-36 (double jeopardy); *Rowland*, 42 So. 3d at 505-08 (double jeopardy); *Kennedy v. State*, 732 So. 2d 184, 186-87 (Miss. 1999) (illegal sentence); *Grubb v. State*, 584 So. 2d 786, 787, 789 (Miss. 1991) (illegal sentence).

¶11.    Most vitally, this Court previously has held that neither the common law nor our own constitutional law applies the doctrine of *res judicata* to constitutional claims. In *Bragg v. Carter*, 367 So. 2d 165, 165-66 (Miss. 1978), this Court considered whether common-law *res judicata* barred a taxpayer suit alleging a violation of Article 4, Section 95 of the Mississippi Constitution, which prohibits the donation of public lands to private entities. In an opinion joined by all justices, this Court stated:

> Although the doctrine of res judicata is based upon the public policy of putting an end to litigation, we nevertheless think the doctrine is not inflexible and incapable of yielding to a superior policy, and particularly so since the confirmation decree has every attribute of tacit consent. *The doctrine of res judicata must yield to the constitution.*

*Id.* at 167 (citing *C.I.T. Corporation v. Turner*, 248 Miss. 517, 157 So. 2d 648 (1963); Annotation, *Res Judicata as Affected by Fact that Former Judgment was Entered by Agreement or Consent*, 2 A.L.R. 2d 514, 532 (1948)) (emphasis added). The *Bragg* Court recognized that a doctrine of judicial expediency and economy *must* yield to the superior policy of enforcing constitutional provisions. Stated differently, the Court removed claims based in constitutional principle from the bounds of common law *res judicata*.

7

¶12. And in ***Ex parte Pattison***, 56 Miss. 161 (1878), in considering an appeal from a trial court's denial of a prisoner's petition for writ of habeas corpus under the then-existing statutory codification of habeas relief, this Court stated:

> *At common law, an adverse decision on one writ of habeas corpus did not preclude a second one.* Indeed, so tender was the law of the liberty of the subject, that he might, when deprived of it, resort in turn to every judge in the realm, and was entitled to be enlarged if any one of them thought proper to bail or discharge him. Such is still the law in many States of the American Union.

*Id.* (emphasis added) (internal citations omitted). That is, a petitioner's right to collaterally attack his unlawful incarceration was not limited by prior adjudication.

¶13. No unlawful incarceration is constitutional. The motion for post-conviction relief before us attacks Smith's unlawful conviction and incarceration. Under ***Pattison***, that procedural mechanism is not limited by common-law *res judicata*. And Smith challenges the trial court's failure to determine competency, affecting his fundamental due-process rights. Under ***Bragg***, claims of constitutional dimensions are likewise excepted from common-law *res judicata*.

¶14. Turning to the merits, the constitutional standard for competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." ***Hearn v. State***, 3 So. 3d 722, 728 (Miss. 2008) (quoting ***Dusky v. United States***, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960)). This Court has held that a competent defendant is one:

> (1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense

if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.

*Hearn*, 3 So. 2d at 728 (quoting *Martin v. State*, 871 So. 2d 693, 697 (Miss. 2004)).

¶15.   When the evidence raises sufficient doubt as to the defendant's competency to stand trial, the defendant is deprived of due process of law if the trial court fails to conduct a separate competency hearing. *Pate*, 383 U.S. at 385, 86 S. Ct. 836. Mississippi's procedure for determining competency appears in Uniform Rule of Circuit and County Court Practice 9.06, which provides:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court . . . .
>
> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.

URCCC 9.06. A statute provides that a court-ordered mental evaluation to determine competency to stand trial will be at the county's expense. Miss. Code Ann. § 99-13-11 (Rev. 2007).

¶16.   This Court has held that, once the trial court has reasonable ground to believe the defendant is incompetent, Rule 9.06 mandates that the trial court shall order a mental evaluation followed by a competency hearing to determine whether the defendant is competent to stand trial. *Sanders v. State*, 9 So. 3d 1132, 1137 (Miss. 2009). We have stated

9

that "it is evident that it would be error not to hold a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial." *Id.* In *Sanders*, the trial court ordered a mental evaluation of the defendant to determine his competency to stand trial. *Id.* We held that the order for a mental competency evaluation indicated that the trial court necessarily found that some of the defendant's assertions in his motion for a mental evaluation were sufficient to warrant a mental evaluation. *Id.* In other words, a trial court's order of a mental evaluation to determine competency under Rule 9.06 means that the trial court had reasonable ground to believe the defendant was incompetent to stand trial. *Id.*; *see Coleman v. State*, 127 So. 3d 161, 168 (Miss. 2013) (stating that a trial court's grant of an order for a mental competency evaluation is "conclusive of its having found reasonable ground to believe [the defendant] was entitled to a mental examination and a competency hearing"). And when the trial court has such reasonable ground, a mental evaluation and competency hearing are required. URCCC 9.06. Thus, in *Sanders*, the fact that the trial court had ordered a mental evaluation but never held a competency hearing was reversible error.[1] *Sanders*, 9 So. 3d at 1139.

¶17.    Smith argues that, under Rule 9.06, the trial court's order of a mental evaluation mandated that the evaluation occur and that it be followed by a competency hearing. The

---

[1] The Court in *Sanders* also reviewed whether trial testimony from the defendant's psychiatrist obviated the need for a competency hearing under *Hearn v. State*, and concluded that a competency hearing had been required. *Sanders*, 9 So. 3d at 1137-38 (citing *Hearn*, 3 So. 3d at 730) (holding that a competency hearing was not required because the defendant's psychiatrist testified at trial as to his competency and was subject to cross-examination, and the defendant had the opportunity to present competing evidence). That issue is irrelevant to Smith's appeal because this case does not concern the sufficiency of a competency hearing.

Court of Appeals disagreed and found that the record failed to show the trial court had reasonable ground to believe Smith was incompetent. *Smith*, 2013 WL 3799825, at *3. The Court of Appeals observed that the order for a mental evaluation did not state the reason for the mental evaluation and reasoned that a trial court is empowered to order a mental evaluation to address matters other than competency, such as to support an insanity defense or to generate mitigation evidence for use in sentencing. *Smith*, 2013 WL 3799825, at **2-4 (citing *Evans v. State*, 984 So. 2d 308, 313 (Miss. Ct. App. 2007)) (holding that "if a trial judge orders a psychiatric evaluation without a reasonable question as to the defendant's competency, he is not also required [to] order a competency hearing"). In particular, the Court of Appeals relied on the facts that the agreed order granting a continuance stated that the mental evaluation was to be at Smith's expense, and Smith's father stated that Smith had been returned from the State Hospital after the family was unable to pay for a mental evaluation. *Smith*, 2013 WL 3799825, at *2. The Court of Appeals stated that "if competency was truly the issue, Smith could have required the State to pay for the evaluation pursuant to [Section 99-13-11]." *Smith*, 2013 WL 3799825, at *2.

¶18.    According to the Court of Appeals, "without more, we cannot say that the circuit court's decision to order the mental evaluation was simultaneously a finding that reasonable grounds existed to question Smith's competency." *Smith*, 2013 WL 3799825, at *3. We agree that, on this record, no reviewing court can say whether the order for a mental evaluation triggered the requirements that a mental evaluation and competency hearing occur. Simply put, the record is ambiguous as to whether the mental evaluation was ordered for the purpose of determining Smith's competence to stand trial. The order for a mental

11

evaluation does not state the reason. No notice of insanity defense appears in the record. *See* URCCC 9.07. Nothing except the agreed order for a continuance stating that the evaluation was to be at Smith's expense tends to show that the mental evaluation was ordered for some purpose other than competency. But the agreed order is far from conclusive that competency was not the reason for the mental evaluation. Smith was transported to the Mississippi State Hospital, which routinely performs competency evaluations at the county's expense. And Smith vehemently argues in his motion for PCR that the trial court erred by requiring him to pay for a competency evaluation in violation of Section 99-13-11. Further, evidence was before the trial court that Smith had mental problems; his attorney requested a mental evaluation, and at the plea hearing he stated that he had depression and possibly psychosis, and was on medication for these conditions.[2]

¶19.    Because significant ambiguity surrounds the reason the trial court ordered a mental evaluation, we reverse and remand for an evidentiary hearing on this issue pursuant to Mississippi Code Section 99-39-19 (Rev. 2007). We note that, although the State now urges this Court to affirm the Court of Appeals, the State conceded this issue in its brief before the

---

[2] After his appeal, Smith filed an "Appendix of Exhibits" in the Court of Appeals containing his mental-health records. These records evince Smith's long history of substance abuse and mental illness. The records show that, in August 2008, Smith was transferred to Singing River Hospital after having intentionally cut himself while in jail awaiting trial. On October 31, 2008, thirteen days before the court order for a mental evaluation, a psychiatrist at Singing River performed a mental evaluation that assessed Smith as bipolar and possibly psychotic and recommended that Smith be treated at the State Hospital. The Court of Appeals correctly held that, because these records were not included in Smith's motion for PCR, they could not be considered on appeal. *Smith*, 2013 WL 5799825, at *3 n.3. These records may be submitted to the trial court at the evidentiary hearing. Miss. Code Ann. § 99-39-23(4) (Rev. 2007).

Court of Appeals and requested that this case be remanded for a retrospective competency hearing. However, that remedy is unavailable, because in ***Coleman v. State***, 127 So. 3d 161, 168 (Miss. 2013), a plurality of this Court held that the appropriate remedy for failure to hold a competency hearing is a new trial, not a retrospective competency hearing. Therefore, if, after the evidentiary hearing, the trial court determines that the purpose of the court-ordered mental evaluation was to determine Smith's competency to stand trial, Smith's conviction cannot stand, and Smith must be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06.

**CONCLUSION**

¶20.   The trial court found that it plainly appeared from the face of Smith's motion for PCR and annexed exhibits that he was not entitled to any relief. The Court of Appeals affirmed that judgment. But we find that Smith presented sufficient evidence supporting the denial of his fundamental right not to be convicted while incompetent to survive the summary dismissal of his motion for PCR. Therefore, we reverse the judgments of the Court of Appeals and the Circuit Court of Jackson County and remand the case to the trial court for an evidentiary hearing.

¶21.   **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS AND KING, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.;  LAMAR AND PIERCE, JJ., JOIN IN PART.**

**COLEMAN, JUSTICE, DISSENTING:**

¶22.   I respectfully disagree that the case *sub judice* implicates Uniform Rule of Circuit and County Court Practice 9.06, upon which the majority bases its holding.  Accordingly, I

13

dissent.

**I. The Court of Appeals correctly held that Rule 9.06 does not apply to the case *sub judice*.**

¶23. In short, I agree with the well-reasoned opinion issued by the Court of Appeals in *Smith v. State*, 2013 WL 5799825 (Miss. Ct. App. March 3, 2014), wherein the Court of Appeals noted that nothing in the record indicates that Smith's competency to stand trial was questioned. *Id.* at \*2 (¶ 7). To put it in Rule 9.06 terms, Smith identifies nothing in the record of the criminal proceedings against him to indicate the existence of any "reasonable ground to believe" him "incompetent to stand trial." URCCC 9.06. As the Court of Appeals pointed out, myriad reasons exist to conduct a mental competency examination aside from a determination that the above-described reasonable grounds exist. *Smith*, 2013 WL 5799825, \*2 (¶ 7). Finally, the Court of Appeals correctly points out that, if the trial court's order allowing the defendant a mental exam were traveling under Rule 9.06, then, by operation of Mississippi Code Section 99-13-11, the county would have footed the bill. *Id.* The trial court's order in the instant case provided that the exam would be conducted at the defendant's expense. For the above-described reasons as well as the others addressed by the Court of Appeals, I would affirm the trial court's denial of post-conviction relief.

**II. *Rowland* and whether *res judicata* should apply.**

¶24. I take the opportunity afforded by writing the instant dissent to address another pertinent issue – the applicability (or inapplicability) of the doctrine of *res judicata* to Smith's claim for post conviction relief. The issue addressed today, that of the competency hearing, was raised in Smith's second petition filed on February 22, 2012, after the trial court

14

denied his first petition on January 6, 2012.

¶25.    In the absence of any reason to disregard it, the doctrine of *res judicata* operates to bar Smith's second petition because it bars the petitioner from litigating issues that he placed or could have placed before the court in his first petition.[3] ***Little v. V & G Welding Supply, Inc.***, 704 So. 2d 1336, 1337-1338 (¶ 8) (Miss. 1997) ("Res judicata bars all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action.") (citing ***Estate of Anderson v. Deposit Guaranty Nat'l Bank***, 674 So. 2d 1254, 1256 (Miss. 1996).  Nothing in the record indicates that Smith could not have presented the mental examination issue to the trial court in his first petition.  In order for *res judicata* to operate to preclude Smith's instant claim, the following four identities must exist: (1) the subject matter of the action; (2) the cause of action; (3) the parties to the cause of action; and (4) the quality or character of a person against whom the claim is made. ***Little***, 704 So. 2d at 1338 (¶ 9).  They do.  The subject matter of both his first and second petition was a collateral attack upon his conviction and sentence.  The causes of action both rely on the underlying facts and circumstances leading up to his guilty plea, conviction, and sentence.  In both petitions, the parties were Smith and the State of

---

[3] The Legislature encoded the doctrine of *res judicata* for post-conviction relief purposes in Mississippi Code Section 99-39-21, but – interestingly – as encoded the doctrine would apply only to issues and facts determined at trial or on direct appeal.  A bar against successive writs is found elsewhere in the Uniform Post-Conviction Collateral Relief Act, *see* Mississippi Code Section 99-39-23(6), which would be a statutory enactment of *res judicata* that more fully applies here.  Otherwise, and the latter does not incorporate the identities or by its terms require the denial of relief be on the merits, there appears to be no attempt to statutorily apply *res judicata* to issues and facts determined in earlier post-conviction proceedings.

Mississippi, and the third and fourth identities are thus satisfied.

¶26.   We have held – several times – that when a petitioner seeking post-conviction relief puts a fundamental right at issue, Mississippi courts will not apply various procedural bars that might otherwise foreclose any relief.  *See, e.g., Rowland v. State*, 98 So. 3d 1032, 1036 (¶ 6) (Miss. 2012) (noting that, as to several fundamental rights, including the protection against double jeopardy, illegal sentencing, and denial of due process at sentencing, the procedural bars found in Mississippi's Uniform Post-Conviction Collateral Relief Act will not apply) (citing, *inter alia*, *Rowland v. State*, 42 So. 3d 503, 508 (Miss. 2010); *Ivy v. State*, 731 So. 2d 601, 603 (Miss. 1999); *Kennedy v. State*, 732 So. 2d 184, 186-87 (Miss. 1999); *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991); *Smith v. State*, 477 So. 2d 191, 195 (Miss. 1985)).  For the reasons I further develop below, I am of the opinion that the doctrine of *res judicata* places a substantive – not procedural – bar, and I would apply it even when a petitioner asserts a fundamental right.

¶27.   Several courts have noted the substantive nature of *res judicata*.  In *JP Morgan Chase Bank v. Winthrop Props.*, 312 Conn. 662, 94 A.3d 622 (2014), the Supreme Court of Connecticut noted that the procedural matter before it was "not intended to alter established definitions and the scope of such terms within the substantive doctrines of *res judicata*, collateral estoppel, and relation back, which implicate different concerns." *Id.* at 684 n.11. Ohio's state courts repeatedly have written that "*res judicata* is a substantive rule of law[.]" *Hopkins v. Dyer*, 104 Ohio St. 3d 461, 820 N.E.2d 329 (2004).  The Supreme Court of Indiana held that a litigant "was entitled to challenge the substantive determination of the trial court that his claims were barred by the substantive defense of *res judicata*[.]" *Smith*

16

*v. Euler*, 956 N.E.2d 657, 658 (Ind. 2011). In the context of post-conviction relief, the Illinois Supreme Court addressed the relationship of *res judicata* to Illinois's post-conviction relief statutes and wrote, "Thus, waiver and *res judicata* are substantive considerations to the extent that they define and limit the scope and purpose of the Act." ***People v. Blair***, 215 Ill. 2d 427, 440, 631 N.E.2d 604, 613 (2005). *See also* ***Martin v. Amerman***, 47 Tex. Sup. Ct. J. 285, 133 S.W.3d 262, 266 (2004); ***Johns v. Agrawal***, 748 So. 2d 514, 518 (La. Ct. App. 1999) (recognizing that whether the preclusive effect of a federal court decision is subject to the federal law on *res judicata* because the doctrine is substantive); ***Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.***, 204 W.Va. 465, 476, 513 S.E.2d 692, 703 (1998) (the "effect of a judgment as *res judicata* is 'substantive'"); ***VanDeWalle v. Albion Nat'l Bank***, 243 Neb. 496, 503, 500 N.W.2d 566, 572 (1993) ("*res judicata* is a substantive rule"); ***McKinney v. Galvin***, 701 F.2d 584, 586 n.5 (6th Cir. 1983).

¶28.    I agree with those courts that consider the doctrine of *res judicata* substantive in nature. Before the doctrine can apply, there must be an earlier determination on the merits. ***EMC Mortgage Corp. v. Carmichael***, 17 So. 3d 1087, 1090 (¶ 10) (Miss. 2009) ("In addition to the four identities, a fifth requirement is that the prior judgment must be a final judgment that was adjudicated on the merits.") (citing ***Anderson v. LaVere***, 895 So. 2d 828, 833 (Miss. 2004)). Accordingly, I am of the opinion that the bar imposed by operation of *res judicata* differs in a significant way from the bar imposed by, *e.g.*, a statute of limitations. Per the latter, if a petitioner fails to bring an issue before the Court before three years, he may not and loses all opportunity to bring the issue, but without ever having the benefit of a ruling. Per the former, the petitioner has a ruling on the merits. The distinction leads easily to the

17

conclusion reached by so many other courts, that *res judicata* is a creature of substance and not of procedure.

¶29.    Looking at the origins of our rule that petitions for post-conviction relief that raise fundamental rights are exempt from the procedural bars reveals why the above-described distinction makes a difference.  In ***Read v. State***, 430 So. 2d 832, 837 (Miss. 1983), the Court wrote as follows:

> Today, however, state courts are being allowed not inconsiderable leeway when it comes to enforcing procedural rules to bar litigation of federal constitutional rights.  ***Wainwright v. Sykes***, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); ***Engle v. Isaac***, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).  Given such leeway, it is peculiarly appropriate that state courts be faithful stewards of those fundamental rights adjudication of which is thus entrusted to them.  It is appropriate that this Court keep the spirit of [***Brooks v. State***, 209 Miss. 150, 46 So. 2d 94 (1950)] alive. The State's brief would have us take advantage of this leeway—and, in effect, preclude any defendant ever raising the troublesome, unpleasant and no doubt frequently abused claim of ineffective assistance of counsel. The State's invitation should be rejected.

***Read***, 430 So. 2d at 837.  The ***Read*** Court declined the State's invitation because Read "never had a meaningful opportunity to raise the issue in the court below."  ***Id.***  In ***Brooks v. State***, 209 Miss. 150, 46 So. 2d 94 (1950), cited by the ***Read*** Court in the above-quoted paragraph, the Court refused to apply procedural bars when a fundamental right was raised for the first time on appeal. ***Id.*** at 155.  *See also* ***Fisher v. State***, 145 Miss. 116, 110 So. 361, 365 (1926).  Based on my reading of the foregoing cases, we excluded petitions that raised fundamental rights from procedural bars because a petitioner whose fundamental constitutional rights had been violated should have the opportunity to present such alleged violation to a court.  *Res judicata*, because it applies only after a decision on the merits, applies only after a would-be petitioner has had that opportunity or could have had that

18

opportunity but, for whatever reason, passed upon it.

¶30.    "*Res judicata* reflects the refusal of the law to tolerate a multiplicity of litigation.  It is a doctrine of public policy designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions."  ***Hill v. Carroll County***, 17 So. 3d 1081, 1084 (¶ 8) (Miss. 2009) (internal citations omitted).  For the reasons outlined above, I would hold the doctrine of *res judicata* to be a substantive bar against further litigation rather than a procedural one and therefore not a member of the class of procedural bars from which petitioners may have relief when they raise fundamental rights.

**RANDOLPH, P.J., JOINS THIS OPINION.  LAMAR AND PIERCE, JJ., JOIN THIS OPINION IN PART.**