# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01510-COA

**ROBERT SILVIA A/K/A ROBERT WAYNE SILVIA**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/28/2012 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP W. BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER AND SENTENCED TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDERED TO PAY A $10,000 FINE AND $6,500 IN RESTITUTION TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | REVERSED AND REMANDED - 05/26/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     Robert Silvia was convicted of murder and sentenced to life in the custody of the

Mississippi Department of Corrections.  Silvia was also ordered to pay a $10,000 fine and

$6,500 in restitution to the Crime Victims' Compensation Fund.  Upon denial of his post-trial

motions, Silvia filed an appeal, asserting the trial court erred by: (1) denying his motion to suppress; (2) failing to conduct a competency hearing; and (3) failing to grant his motion for a directed verdict or judgment notwithstanding the verdict. We consider Silvia's second issue, the lack of a competency hearing, to be dispositive in this case. Since we reverse and remand for a new trial based on the competency issue, we need not address his other two issues on appeal.

## FACTS

¶2. On June 10, 2010, Mandy Barthelot informed the Walthall County Sheriff's Department that she was concerned about her mother, Darlene Barthelot. Mandy, who lived in Louisiana, had not heard from Darlene, and her attempts to reach her mother through Silvia, Darlene's boyfriend of seventeen years,[1] had been unsuccessful. Mandy said Silvia would give her varying excuses as to why Darlene was unavailable.

¶3. Deputy Billy Wayne Thornhill reported to Darlene and Silvia's home in Jayess, Mississippi. Gavin Fulkerson, a neighbor, informed Deputy Thornhill that he had not seen Darlene in several days, and Silvia had told him and Mandy conflicting stories as to Darlene's whereabouts. Fulkerson told Deputy Thornhill that Silvia had been upset and crying over his recent separation from Darlene. Fulkerson also said Silvia had recently lost his job. Fulkerson testified that when Mandy told Silvia she was calling the police, Silvia left his house in a hurry, driving a small red car. Deputy Thornhill also spoke on the phone with a coworker of Darlene, who indicated she had not been to work in several days, and it

---

[1] Darlene was separated from her husband, George, when she met Silvia. Silvia testified Darlene and George finally signed their divorce papers shortly before Darlene died.

was unusual for her to miss work.

¶4.     After knocking on the door and receiving no response, Deputy Thornhill walked around the house and knocked on the windows.  Deputy Thornhill testified he thought someone was in the house because he heard a noise from inside and saw a white car parked next to the house.  Based upon Mandy's and Fulkerson's concerns and the fact that Darlene had missed work for several days, Deputy Thornhill contacted Toney Rushing, an investigator, to get permission to enter the house.  Deputy Thornhill then entered the house to search for Darlene.  Deputy Thornhill eventually located Darlene's body inside a large deep freezer in the kitchen.  Darlene's body was covered with a comforter and packs of frozen food.  Deputy Thornhill lifted the corner of the comforter and saw long dark-colored hair and a human shoulder.  Deputy Thornhill testified he then replaced the comforter, contacted Investigator Rushing, and secured the crime scene.  A search warrant for Silvia's house was subsequently obtained.

¶5.     An alert was issued regarding Silvia's car.  Deputy Hollis Gatlin testified he stopped Silvia's car and, as Silvia exited the car, Silvia "told me he had done something really bad, and that he had lost his job, and his wife was going to leave him, so he shot her."  Silvia was transported to the sheriff's department.  Because Silvia was intoxicated when he was arrested, he was not interviewed until the next day, June 11, 2010.  Silvia waived his *Miranda*[2] rights, then admitted that he shot Darlene.

¶6.     At trial, Silvia admitted to shooting Darlene; however, he testified he did not

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

remember pulling the trigger. Silvia testified he and Darlene had been experiencing financial trouble since he lost his job and emotional stress since Darlene's daughter died in a car accident. Darlene had wanted to separate, suggesting they foreclose on their home and sell their belongings. Silvia said Darlene offered him $1,000 to go home to Massachusetts. He testified that this occurred approximately two days prior to Darlene's death. Silvia admittedly became angry and began drinking more heavily, stating the anger kept building and building inside of him. Silvia was also angry that Darlene had been in communication with her ex-husband concerning her daughter's death and insurance policy.

¶7. When questioned about the actual shooting, Silvia testified that he was sitting in the living room with Darlene, and the next thing he remembered, he was standing in the doorway holding a shotgun and Darlene was dead. He stated he had no memory of shooting her. Darlene had been shot once in the neck and once in the abdomen. Silvia said he covered her body with a comforter, then went to sleep. The next day, Silvia moved Darlene's body to the deep freezer, then attempted to clean the crime scene, including one of the couple's dogs that had blood on it. Silvia stated he ran out of money, so he pawned the shotgun and a piece of Darlene's jewelry, then proceeded to drink heavily and watch pornographic movies.

DISCUSSION

¶8. Silvia contends that the trial court erred by failing to conduct a competency hearing. Prior to trial, Silvia requested a mental examination. The State agreed, and the trial court ordered Dr. Beverly Smallwood to conduct a mental examination to determine whether Silvia was competent to stand trial and make a rational defense. The order also instructed Dr.

4

Smallwood to determine whether Silvia was mentally capable of distinguishing between right and wrong at the time he committed the crime. A mental examination was conducted, but it appears there was no pretrial competency hearing. The record indicates that there were several attempts to schedule a competency hearing prior to trial.

¶9.    On June 18, 2014, the State filed a motion to supplement the record with either a transcript of the competency hearing or, if no transcript was found, a statement of evidence in accordance with Mississippi Rule of Appellate Procedure 10(c). This Court granted the State's motion. We ordered the trial court to determine whether the competency-hearing transcript was available and, if not, to conduct a hearing to determine whether the record could be supplemented pursuant to Rule 10(c). We ordered the transcript or the Rule 10(c) statement of evidence to be filed in the trial court within sixty days of June 24, 2014, the date of our order. We also gave the trial court sixty days to notify this Court if no transcript or Rule 10(c) statement could be made available.

¶10.    According to the supplemental volume, the hearing was held in the trial court on August 11, 2014. The trial judge, the assistant district attorney (Timothy Jones), Silvia, and Silvia's appellate counsel at the time (Phillip Broadhead) , were present. During the hearing, Jones stated, "the State admits that there was no pretrial psychological hearing." Since no hearing had been conducted, Broadhead asked the trial court to "make a finding to the Court of Appeals [that the] record cannot be supplemented according to [Rule] 10(c)." The trial court responded in the affirmative and asked Broadhead to prepare an order. Broadhead agreed. The order dated August 28, 2014, states that "no transcript of a competency hearing

5

can be found, and further, the record cannot be supplemented pursuant to [Rule] 10(c)." We note that there is a copy of Dr. Smallwood's mental examination of Silvia in the supplemental volume, which was filed with this Court on September 2, 2014. However, the record is unclear if the trial court received a copy of this report prior to Silvia's trial. The only copy of the mental examination in the record was submitted at the hearing conducted pursuant to this Court's June 24, 2014 order.

¶11. Uniform Rule of Circuit and County Court 9.06 states:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court . . . .

In *Sanders v. State*, 9 So. 3d 1132, 1136 (¶16) (Miss. 2009), the Mississippi Supreme Court held that the "plain language" of Rule 9.06 requires "a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial." The supreme court also recently held that "when a motion for a mental examination has been granted, such an examination *must occur*, and then a separate competency hearing *must be conducted* before trial begins." *Coleman v. State*, 127 So. 3d 161, 166 (¶14) (Miss. 2013) (emphasis in original). The State contends that a competency hearing was not required because it did not have a reasonable ground to believe that Silvia was incompetent. However, the *Coleman* court stated that a trial court's grant of an order for a mental examination is "conclusive of its having found reasonable ground to believe [the defendant] was entitled to a mental examination and a competency hearing, based on the plain and forthright language of Rule 9.06." *Id*. at 168 (¶19).

6

¶12. In *Smith v. State*, 149 So. 3d 1027, 1035 (¶19) (Miss. 2014), the supreme court reversed and remanded for an evidentiary hearing to determine whether the trial court ordered Smith's mental examination for the purpose of determining his competence to stand trial. The court found "significant ambiguity" regarding the reason for Smith's mental examination. *Id*. The court stated that "if, after the evidentiary hearing, the trial court determines that the purpose of the court-ordered mental evaluation was to determine Smith's competency to stand trial, Smith's conviction cannot stand . . . ." *Id*.

¶13. In this case, it is clear the trial court ordered the mental examination to determine whether Silvia was "mentally competent to stand trial and to make a rational defense, and whether . . . he was mentally capable of distinguishing between right and wrong" at the time he committed the crime. The trial court attempted to schedule the competency hearing, but for reasons unclear in the record, the hearing never occurred. Accordingly, we must reverse and remand for a competency hearing and, if Silvia is found competent to stand trial, a new trial.

¶14. **THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**CARLTON, J., DISSENTING:**

¶15. I respectfully dissent from the majority's decision.

¶16. The appellant and majority assert that this case must be reversed because no on-the-

7

record competency hearing was held by the trial court. However, the record clearly reflects the receipt of the evaluation report,[3] the defense's review of the report, and the trial court's acknowledgment of Silvia's right to request a hearing. The record of the docket calls also reflects that the defense elected not to request a competency hearing. As a result of the defense's decision, no formal hearing was held, but the record reflects that the defense and the judge received the report of Silvia's mental evaluation prior to trial. The record shows that Silvia's right to a competency hearing was honored by the trial court.

¶17. The transcript of the docket call in March 2011 shows that the defense counsel reported to the court, on the record, that Silvia received his psychological evaluation the week prior to that docket call.[4] The defense also stated at the docket call that it would provide the court and the district attorney with copies of the report that day. The report of

---

[3] On June 26, 2014, this Court ordered the trial court to conduct a hearing on the record to determine whether the record can be supplemented with either the pretrial-competency-hearing transcript (though no pretrial competency hearing occurred) or a Mississippi Rule of Appellate Procedure 10(c) statement. Exhibit D to the hearing regarding this Court's order contains the report of Silvia's mental evaluation performed on January 25, 2011. The report explained that the mental evaluation examined Silvia's competency to stand trial and also his sanity at the time of the offense charged. The report reflects that the trial court stipulated that copies be sent to the court, the defense attorney, and the district attorney. The report also reflects that during the evaluation, Silvia was informed that a copy of the report would be provided to the trial court and to his attorney. In the report, Dr. Smallwood stated that she found Silvia mentally competent to stand trial and to make a rational defense, and that on the date of the charged crime of murder, Silvia was mentally capable of distinguishing between right and wrong. Dr. Smallwood also provided that no further forensic evaluation was needed, and that Silvia appeared ready to cooperate with his attorney in the preparation of his case. The billing invoice for the report and evaluation is dated March 8, 2011.

[4] The transcript of the March 2011 docket call is consistent with documentation in the record of the date of the billing invoice: March 8, 2011.

the mental evaluation also reflects that the trial court ordered the psychologist, Dr. Smallwood, to provide the court a copy. The defense continued to explain at that docket call that after reviewing the report from the psychological evaluation, the defense anticipated filing only one pretrial motion. The trial judge acknowledged the defense's intent to file a pretrial motion and directed the defense to proceed with filing the motion. Then, the docket call the next month (April 2011) shows that the sole motion the defense chose to file, and to request a hearing upon, was a motion to suppress on Fourth Amendment grounds.

¶18. According to the transcript from the April 5, 2011 docket call, the defense filed a singular motion to suppress,[5] and the trial judge then set a date to hear the motions. The transcript also shows the defense acknowledged at the docket call that it had received Silvia's mental evaluation. Clearly, the procedural history before us shows that the defense chose not to exercise Silvia's right to a competency hearing after receiving and reviewing the psychological evaluation and report. The record further reflects that the trial court honored Silvia's right to a competency hearing and provided the defense the opportunity to file a motion to request a competency hearing. As discussed, after reviewing the psychological evaluation, the defense intended to file only one motion, a motion to suppress.

¶19. Moreover, the record fails to contain evidence that would raise a reasonable question as to Silvia's competency to stand trial, or to his sanity at the time of the offense, to

_____

[5] The defense filed a motion to suppress the results of the search performed of Silvia's home by sheriff's department, including Darlene's body. The defense claimed that the sheriff's department entered Silvia's home without a warrant and that no exigent circumstances existed to serve as an exception to the requirement that law enforcement obtain a warrant before entering the home.

necessitate the trial court ordering a competency hearing sua sponte, absent a mechanical operation of Uniform Rule Circuit and County Court 9.06.[6] A review of the record fails to show any basis to support a bona fide reason for questioning the mental competency or sanity of Silvia. *See* Miss. Code Ann. § 99-13-11 (Rev. 2007) (mental examinations for the accused). Since the evidence before the trial court raised no bona fide doubt or reasonable question about Silvia's competency to stand trial, I respectfully submit that no constitutional or due-process violation occurred herein.

¶20. A constitutional violation occurs only where the trial court fails to conduct a competency hearing where the evidence before the trial court raised a bona fide doubt about the defendant's competency to stand trial. *Pate v. Robinson*, 383 U.S. 375, 385 (1966). The standard for competency to stand trial is "whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." *Hearn v. State*, 3 So. 3d 722, 728 (¶15) (Miss. 2008) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

¶21. In reviewing the evidence before the trial court, the record herein reflects that Silvia raised no insanity defense, and abandoned (pretrial) pursuit of any insanity defense at trial.[7]

---

[6] Discussing competence to stand trial.

[7] *See M'Naghten's Case*, 8 Eng. Rep. 718 (1843). The report of the mental evaluation reflects Dr. Smallwood's determination that, to a reasonable degree of medical certainty, Silvia was "mentally competent to stand trial and make rational defense," and that on the date of the murder, Silvia "was mentally capable of distinguishing between right and wrong."

10

If Silvia had intended to raise a defense of insanity at trial, he was required to provide prior notice in writing to the State of such intention. *See* URCCC 9.07 (insanity defense). As reflected in the March and April 2011 docket-call transcripts and the record as a whole, Silvia abandoned his right to assert an insanity defense and also a competency hearing after his counsel received and reviewed his psychological evaluation report. *See and compare United States v. Caplan*, 633 F.2d 534, 538-39 (9th Cir. 1980) (addressing abandonment of insanity defense and related examination request, as well as competency to stand trial; court found no error in lack of competency hearing where evidence raised no real question of competency). *See also United States v. Clark*, 617 F.2d 180, 184-85 (9th Cir. 1980).

¶22. I willingly embrace precedent establishing that "[t]he due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006); *United States. v. Makris*, 535 F.2d 899, 909 (5th Cir. 1976). However, this is not a case where the trial court refused to hold a competency hearing or denied the defense's request for a delay in conducting such a hearing. The record shows the evaluation was completed and the county received the bill; and the defense counsel stated at docket call that defense would provide a copy of the mental-evaluation report to the trial court. The report itself acknowledged an order to provide the trial court with a copy of the mental-evaluation report.

¶23. In the context of the procedural history and facts of this case, to find error based upon a mechanical application of procedural rules fails to consider that the transcripts from the

11

docket calls show that the trial court was apprised that the mental evaluation was completed and that the defense and trial court received a copy. The report itself acknowledged that the trial court ordered that a copy be provided to the trial judge. Also, the defense requested no hearing on the report or the competency issue, and the substantial evidence in the record showed Silvia's competence to stand trial. *See* URCCC 9.06. For example, prior to testifying in his own defense, Silvia inquired of the court whether any of his prior convictions would be used against him for impeachment, and after advisement by the trial court on his reason not to testify, the trial court recessed. Silvia consulted with his attorney. When the trial court reconvened, Silvia told the trial court that he elected to testify. He intelligently, consistently, and without difficulty answered questions on direct and cross-examination. Silvia's testimony was detailed and recounted events leading up to the shooting. He also recalled his efforts after the shooting to clean up the crime scene and hide Darlene's body in the freezer. He testified that he remembered standing in the doorway of the TV room and shooting a gun, and he testified that Darlene passed away after the first shot. Silvia testified that after she was shot, Darlene slouched in her recliner, and he remembered putting the gun away. He said that he did not remember the second shot, while also recalling that Darlene died after the first shot. Silvia testified that when he first awakened the next morning, he did not remember the shooting at first. However, when he got up and went into the bathroom and looked into the TV room, it all came back to him. Silvia stated that he felt scared and panicked. He also testified in some detail to the amount and type of alcohol he drank around the time of the shooting and afterwards. He explained that he put Darlene's dead body in the

freezer because the temperature outside reached nearly 100 degrees.

¶24.    The evidence in the record shows that Silvia's testimony was consistent with the autopsy that found Darlene suffered two gunshots to her head, which were fired from a close range. Silvia also provided two pretrial interviews to law enforcement. His *Miranda*-rights waiver was admitted into evidence, without any objection by the defense, as the State's exhibit twelve. The defense raised no issue as to whether Silvia intelligently or voluntarily waived his rights. In the second interview, Silvia admitted to knowing that he must have shot Darlene twice because a live round remained in the gun. Silvia recalled loading the gun with three live rounds. The record shows that the trial court received no information that, objectively considered, should reasonably have raised a doubt about Silvia's competence to stand trial or alerted the trial judge about any possibility that Silvia lacked the ability or understanding to consult with his counsel or understand the proceedings. *See Wade v. State*, No. CIV.A. 13-5890, 2015 WL 225226, at *14 (E.D. La. Jan. 15, 2015); *see also Lokos v. Capps*, 625 F.2d 1258 (5th Cir. 1980).

¶25.    I respectfully acknowledge that this dissent must address the application of the recent case of *Smith v. State*, 149 So. 3d 1027, 1035 (¶19) (Miss. 2014), and I submit that the facts of *Smith* are distinct from this case. In *Smith*, the Mississippi Supreme Court found the defendant's rights were violated where the trial court ordered a mental examination and then accepted his guilty plea without acknowledgment that the examination had been conducted or completed. *Id*. The defendant in *Smith* stated during his guilty-plea colloquy that he had been treated for depression and "psychosis or something like that." *Id*. at 1030 (¶3). The

13

trial court nonetheless accepted Smith's guilty plea and sentenced him without acknowledging whether the mental evaluation had been completed and without conducting a competency hearing. *Id*. Smith subsequently filed a motion for post-conviction relief alleging that the trial court erred because the mental examination had never been performed. *Id*. at (¶4). Smith also argued that the trial court erred by failing to hold a competency hearing. *Id*. The supreme court agreed. *Id*. at 1035 (¶19), In so doing, the supreme court explained that when the evidence raises a sufficient doubt as to the defendant's competency to stand trial, the defendant is deprived of due process of law if the trial court fails to conduct a separate competency hearing. *Id*. at 1033 (¶15).

¶26. In contrast, in the instant case, Silvia received the court-ordered psychological evaluation. As discussed, the transcripts from the docket calls show that the defense informed the trial court of the defense's receipt of the report, deciding ultimately to raise no motion based on the results, despite the opportunity for a hearing provided to Silvia by the trial judge. Silvia also received a trial on the merits that contained abundant evidence of his competency to stand trial and to assist and consult with counsel and understand the nature of the proceedings. The record is devoid of evidence raising a reasonable question of his competency to stand trial, or sanity at the time of the offense.

¶27. *Sanders v. State*, 9 So. 3d 1132, 1139 (¶25) (Miss. 2009), is also distinguishable from the instant case since the trial court in *Sanders* ordered a mental examination, and afterwards the defendant sufficiently raised the defense of insanity at trial. In *Sanders*, the defense also provided the State with written notice of such prior to trial. *Id*. Since the trial court ordered

a mental examination, and since Sanders provided the State and the trial court with pretrial notice of his insanity defense, the defense sufficiently raised the issue of sanity and competency. In the present case, however, Silvia gave no pretrial notice of an insanity defense and raised no such defense at trial. Moreover, the defense raised no evidence at trial reasonably questioning Silvia's sanity or competency. The defense also raised no objection to the *Miranda* warnings, and the defense counsel clearly consulted effectively with Silvia during the trial.

¶28.     In *Pate v. Robinson*, 383 U.S. 375, 376-77 (1966), the defense counsel, throughout the proceedings, insisted on a lack of competence of the defendant. The United States Supreme Court found no waiver of the defendant's right to a competency hearing therein based on counsel's failure to request a hearing, explaining that the evidence introduced at trial showed a reasonable question of competency, thereby entitling him to a competency hearing. *Id.* at 385-86. In contrast, Silvia's counsel told the judge he received the evaluation results but chose only to raise a Fourth Amendment suppression motion. Silvia's counsel did not request a hearing even after the trial court's recognition of Silvia's right to a hearing and opportunity to request one, and neither the evidence nor the defense raised an issue of competency or *M'Naghten*[8] sanity at trial or during the pretrial hearing on motions.

¶29.     A criminal defendant is presumed competent. *Billiot v. State*, 454 So. 2d 445, 463 (Miss. 1984). Clearly, the evidence before the trial court, and in this appeal, raises no reasonable question or bona fide doubt as to Silvia's competence to stand trial. The record

---

[8] *See M'Naghten's Case*, 8 Eng. Rep. 718 (1843).

instead reflects abundant evidence of his competence to stand trial. Moreover, the report of the mental evaluation provided that Dr. Smallwood found Silvia was competent and ready to stand trial, and also determined that Silvia was sane at the time of the offense. Dr. Smallwood opined that no further forensic evaluations were needed. As stated, the trial court recognized Silvia's right to a hearing, and the face of the record of the docket calls shows that the trial court and the defense received the report of the mental evaluation. To reverse Silvia's conviction for the failure of the trial court in this case to hold a competency hearing on the record, after documentation of receipt of the mental-evaluation report and a conscious choice by Silvia's counsel to not pursue such, opens the door to abuse of the judicial process.