# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-DP-00006-SCT

**ERIK WAYNE HOLLIE a/k/a ERIC HOLLIE a/k/a ERIK HOLLIE**

*v.*

**STATE OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2010 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| TRIAL COURT ATTORNEYS: | M. A. BASS, JR. |
| | RENEE BERRY |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ALISON R. STEINER |
| | ANDRE de GRUY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JASON L. DAVIS |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | REVERSED, VACATED AND REMANDED - 09/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Erik Wayne Hollie walked into a pawn shop in Wesson, Mississippi, and killed the owner because he didn't follow "the Lord." Hollie claimed "the Lord" led him there to kill the man. A couple of days before the murder, Hollie robbed a gas-station attendant at knife point because, according to Hollie, the two men had argued about religion.

¶2.     Shortly after the murder, Hollie turned himself in and confessed to both the armed robbery and the capital murder. The trial judge appointed an attorney to represent Hollie, and he filed a motion for a mental evaluation. A state doctor evaluated Hollie, but before a competency hearing was held, Hollie pleaded guilty to both crimes. The trial judge accepted the guilty pleas without any adjudication on Hollie's mental status.

¶3.     At sentencing, Hollie put on no mitigating evidence, and he specifically instructed his attorney to put on no defense. The only thing before the jury from the defense was Hollie's own statement to the jury, which was just one sentence. "I ask that you let the Lord deal with me and sentence me to death." The jury did just that.

¶4.     Hollie filed no appeal or any motions for post-conviction relief. The matter now is before the Court on mandatory review of his sentence of death. Finding that the trial court erred in ordering a mental evaluation but failing to hold a hearing on Hollie's competency, the Court vacates Hollie's guilty pleas, convictions, and his sentences, and remands this case for a competency determination.

## FACTS AND PROCEDURAL HISTORY

¶5.     On September 5, 2009, Hollie got into an argument about religion at a BP gas station with an employee named Lalit Patel. The next day, Hollie went back to the gas station and got into an altercation with Patel. Hollie pulled a knife on Patel, putting the scuffle to an end. Hollie then left, grabbing a pack of cigarettes and driving off with $30 worth of gas.

¶6.     Two days later, on September 8, 2009, Hollie went into the Wesson Pawn and Gun Shop and killed the store owner, Denmon Ward. Hollie took several handguns from the store

2

and left. The next day, Hollie turned himself in to law enforcement. Once in custody, Hollie confessed to killing Ward. He said he did not know why he did it, but that he was led to the pawn shop by "the Lord," and that Ward died because he did not follow "the Lord." Hollie also confessed to the armed robbery of Patel.

¶7.     During his statement to police, Hollie made multiple references to having mental health issues and said he was "fed up with life" and that the police could kill him. When asked why he had come to the police department that day, Hollie replied that the "Lord" had led him there "to turn myself in or die." He also stated that he planned to "go to his death" that morning but the officers talked him out of it. Later in the interview Hollie asked the officers to "take me out back and do me right and shoot me in the f***ing head. That's all I want."

¶8.     The grand jury indicted Hollie for the armed robbery of Patel and for the capital murder of Ward. The indictment for capital murder provided that Hollie:

> did willfully, unlawfully and feloniously, without the authority of law and with or without deliberate design, kill and murder one Denmon Ward, a human being, at a time when he, the said Erick Wayne Hollie, was then and there engaged in the commission of the crime of Armed Robbery, contrary to and in violation of Section 97-3-19(2)(e) of the Mississippi Code . . . .

In pertinent part, the indictment for armed robbery charged Hollie:

> with the unlawful and felonious intent to take, steal and carry away from the presence of Lalit Patel, a human being, personal property, of value of Lalit Patel dba BP Fuel Station, he, the said Erik Wayne Hollie, by putting the said Lalit Patel in fear of immediate injury to his person by the display and exhibition of a certain deadly weapon, to-wit: a knife, did wilfully, unlawfully and feloniously take, steal and carry away from the presence of the said Lalit Patel, against his will, certain personal property of value of the said Lalit Patel

3

dba BP Fuel Station, to-wit: gasoline, contrary to and in violation of Section 97-3-79 of the Mississippi Code . . . .

¶9. At Hollie's arraignment, the trial judge asked Hollie if he wanted an attorney. Hollie replied, "it don't matter." The judge followed up, "It don't matter . . . ? Well, are you going . . . to do anything to hire a lawyer or anything of that nature?" Hollie said "no," though later at the proceeding he said he wanted an attorney appointed to represent him.

¶10. After counsel was appointed, Hollie's attorney requested a mental examination to determine whether he was competent to stand trial and whether he was insane under Mississippi law at the time of the crimes. The trial judge ordered an examination. Dr. Criss Lott conducted the examination and prepared a report.

¶11. But before the court held a hearing on the matter, Hollie pleaded guilty to both crimes. The court never held a hearing on Hollie's competence or sanity, but instead accepted Hollie's guilty pleas without any adjudication on Hollie's mental status. Dr. Lott never testified, and his report, while filed with the trial court, was never admitted into evidence.

¶12. At sentencing, before the jury was selected, Hollie's attorney requested to read and submit into the record an affidavit prepared by Hollie and to question Hollie under oath. The affidavit prohibited Hollie's attorney from putting on any defense or taking any action on behalf of Hollie. This included questioning the venire, striking any potential jurors, calling any witnesses, offering any mitigating evidence, or making any type of closing arguments. The affidavit also stated that the waiver of these constitutional rights was knowing and done after consultation with counsel. Hollie also acknowledged under oath that he took these actions voluntarily and against the advice of counsel.

4

¶13. The State then proceeded to select the jury without any actions from Hollie or his counsel. Once the jury was empaneled, the State put on its case, arguing for the death penalty. After the State rested and gave closing remarks, Hollie addressed the jury. He asked that they sentence him to death and "let the Lord deal with me."

¶14. The State offered two aggravating factors:

> Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
>
>> (1) Whether the defendant has been previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. [§ 99-19-101(5)(b), hereafter the "prior violent felony conviction" aggravator]
>> (2) Whether the capital offense was committed while the defendant was engaged in the commission of a robbery. [§ 99-19-101(5)(d) hereafter the "committed while engaged in robbery" aggravator]

The first aggravating factor referred to the armed robbery of Patel. The second referred to the robbery of Ward under the felony murder statute. No proof of mitigating factors was offered.

¶15. The jury returned a verdict imposing the death penalty, finding the Patel robbery as the only aggravating factor. The verdict read:

> [W]e, the jury, unanimously find that the aggravating circumstances of (list or itemize all of the aggravating circumstances presented in section B of this instruction) which you unanimously agree existed in this case beyond a reasonable doubt.
>
> Mr. Hollie pled guilty to armed robbery on November the 6th, 2009. Incident occurred on September 6th, 2009.

The trial court sentenced Hollie to death for the murder of Ward and fifty years for the armed robbery. The judgment of conviction and the sentence were entered on March 16, 2010.

¶16.    After his conviction and sentence, Hollie did not file a post-trial motion or any appeal or any motions for post-conviction relief.[1] No action was taken on his behalf until March 22, 2012, when the Office of the State Public Defender filed a motion to substitute counsel and to file out-of-time post-trial motions, including seeking leave to file an out-of-time appeal.[2] The trial court initially granted Hollie's motions, but after Hollie sought a new mental evaluation, the State  filed a motion arguing the trial court lacked jurisdiction. More than a year later, on November 18, 2013, the trial judge ruled in favor of the State, reversing his prior order and dismissing all of the proceedings. Then on January 2, 2014, the State filed a motion to set a date for execution with this Court.  We denied that motion, and Hollie's case is now before the Court under Mississippi Code Section 99-19-105, which mandates a

---

[1] M.A. Bass and Renee Berry represented Hollie at trial. After Hollie was sentenced, Bass sent a letter to Hollie asking him to sign an affidavit acknowledging that he had instructed Bass not to file an appeal, or alternatively, to sign an affidavit authorizing Bass to file the appeal if Hollie had changed his mind. The record does not indicate whether Hollie signed either affidavit; neither is in the record.

[2] After being substituted as counsel, the Office of the State Public Defender has actively pursued Hollie's incompetency defense. This includes having Hollie examined by Dr. Donna Schwartz-Watts, a forensic psychiatrist, and including in the record parts of Hollie's Mississippi Department of Corrections medical records regarding his current mental status and treatment. Hollie also argues that Dr. Lott's opinion did not consider Hollie's taped confession, and that Dr. Lott did not have Hollie's full medical  record before him. But because Dr. Lott's and Dr. Schwartz-Watts's findings either were not properly before the trial court (Lott report) or were not before the trial court at all (Schwartz-Watts report), we do not consider either.

6

review of all death sentences. Hollie raises eight issues, but, because the first matter is dispositive, we do not address the subsequent issues:[3]

> **The conviction relied upon by the jury in imposing a death sentence, and/or the death sentence itself, must be set aside because the trial court failed to make any judicial determination at any point in the proceedings that Hollie was competent to proceed.**

## DISCUSSION

¶17. This Court is reviewing Hollie's sentence pursuant to the statutory requirement that each sentence of death must be evaluated to determine:

> (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
>
> (b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101;

---

[3] The other claims Hollie raises are: (1) The death sentence must be set aside because the trial court failed to properly ensure that Hollie understood all of the constitutional rights he was waiving by refusing to permit any defense to any aspect of the sentencing process, or otherwise to ensure that such waiver was knowing and voluntary; (2) The death sentence must be set aside because the sentencing verdict returned by the jury failed to include factual findings sufficient to support that Hollie had been previously convicted of a violent felony, the sole aggravating circumstance upon which the jury's death sentence relied; (3) The death sentence must be set aside because there was no evidentiary basis for permitting the jury to consider or find the only aggravating circumstance that it purported to find; (4) The death sentence must be set aside because the trial court's written and oral sentencing instructions misled the jury on a material matter by incorrectly informing it that neither a death sentence nor a sentence of life in prison without parole could be imposed except on a unanimous verdict by the jury as to sentence; (5) Permitting Hollie to employ the sentencing trial as a means of attempting to commit suicide by jury is against public policy and requires reversal of the death sentence; (6) The death sentence must be set aside because it is constitutionally and statutorily disproportionate; (7) The cumulative effect of the errors in the trial court mandates reversal of any convictions obtained, and/or of the sentence of death imposed on Hollie in this matter.

(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and

(d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.

Miss. Code Ann. § 99-19-105(3) (Supp. 2014). Additionally, this Court "shall render its decision on legal errors enumerated, the factual substantiation of the verdict, and the validity of the sentence." Miss. Code Ann. § 99-19-105(6) (Supp. 2014).

### *Standard of Review*

¶18.    This Court reviews appeals from a death sentence with heightened scrutiny. ***Bennett v. State***, 933 So. 2d 930, 939 (Miss. 2006) (citing ***Balfour v. State***, 598 So. 2d 731, 739 (Miss. 1992)); ***Batiste v. State***, 121 So. 3d 808, 829 (Miss. 2013). "This higher level of scrutiny requires that all doubts be resolved in favor of the accused because 'what may be harmless error in a case with less at stake becomes reversible error when the penalty is death.'" ***Bennett***, 933 So. 2d at 939 (quoting ***Irving v. State***, 361 So. 2d 1360, 1363 (Miss. 1978)); ***Batiste***, 121 So. 3d at 829.

> **The conviction relied upon by the jury in imposing a death sentence, and/or the death sentence itself, must be set aside because the trial court failed to make any judicial determination at any point in the proceedings that Hollie was competent to proceed.**

### *A. Capital-Murder Conviction and Sentence*

¶19.    For a criminal defendant to be deemed mentally competent to stand trial, he must have "the sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding . . . and . . . a rational as well as factual understanding of the proceedings against him." ***Dusky v. United States***, 362 U.S. 402, 402, 80 S. Ct. 788, 788-89, 4 L. Ed. 2d 824, 825 (1960) (*per curiam*); ***Coleman v. State***, 127 So. 3d 161, 164 (Miss. 2013). This Court further has defined a competent defendant as one:

> (1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.

***Hearn v. State***, 3 So. 3d 722, 728 (Miss. 2008).

¶20. It is a violation of a criminal defendant's right to due process to try or convict him while he is incompetent. ***Pate v. Robinson***, 383 U.S. 375, 385, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); ***Smith v. State***, 149 So. 3d 1027, 1031 (Miss. 2014). This is because such action fundamentally impinges upon his right to a fair trial. ***Pate***, 383 U.S. at 385. The United States Supreme Court has held that "the prohibition [against trying or convicting an incompetent defendant] is fundamental to an adversary system of justice." ***Drope v. Missouri***, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); ***Smith***, 149 So. 3d at 1031.

¶21. To ensure this constitutional right is properly guarded, this Court has adopted Uniform Rule of Circuit and County Court Practice 9.06, which provides:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court . . . .
>
> After the examination *the court shall conduct a hearing* to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant

is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.

URCCC 9.06 (emphasis added). This rule requires that, once the trial court has reasonable grounds to believe the defendant is incompetent, the trial court must order a mental evaluation followed by a competency hearing to determine whether the defendant is competent to stand trial. *Sanders v. State*, 9 So. 3d 1132, 1137 (Miss. 2009).

¶22.    In cases like today's, in which a mental evaluation has been ordered, this Court has held that this is a per se showing that the trial court had reasonable grounds to believe the defendant was incompetent to stand trial. *Id.* As a result, once a mental evaluation is ordered, a competency hearing is mandatory. *Id.*; *Smith*, 149 So. 3d at 1033.

¶23.    When a mental evaluation is ordered but no competency hearing is conducted, this Court has held that this is reversible error, unless the purpose of Rule 9.06 has been satisfied under the circumstances. *Hearn v. State*, 3 So. 3d 722, 730 (Miss. 2008). In *Hearn*, the trial court ordered a mental examination, which was conducted, but the judge failed to hold a formal competency hearing. However, at trial, the State's examining doctor testified as to Hearn's competence and was subject to cross-examination by Hearn. This Court stated that this satisfied the intent of Rule 9.06 and found no error. *Id.*

¶24.    In another case similar to the current one, a plurality of the Court found that when the trial court judge fails to hold a competency hearing, the purpose of Rule 9.06 cannot be met by a retroactive hearing. *Coleman v. State*, 127 So. 3d 161, 167 (Miss. 2013).  In that case,

10

Coleman was granted a hearing after his conviction to determine his competency. But, at the hearing, Coleman put on almost no evidence suggesting he was incompetent. *Id.* at 164. Nevertheless, a plurality of this Court, concerned with the inherent dangers and difficulties in holding retrospective competency hearings, found such hearings failed to meet the standard set forth in *Hearn*. *Id.* at 167. That is, the purpose of Rule 9.06 is not met by a retrospective hearing. *Id.*

¶25.   More recently, in *Smith v. State*, this Court recognized the plurality opinion in *Coleman* as controlling. *Smith*, 149 So. 3d at 1035. In that case, the trial judge ordered a competency evaluation but failed to hold a hearing on the matter. Smith raised this issue in a motion for post-conviction relief, and the State acknowledged the error. The State, however, argued that the proper remedy was a retrospective hearing. *Id.* This Court disagreed and provided that "that remedy is unavailable" under *Coleman*. *Id.* Instead, the Court found that where the purpose of a court-ordered mental evaluation was to determine competency to stand trial, the defendant "must be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06." *Id.*

¶26.   Here, the State argues Hollie is not entitled to a competency determination or new trial because Hollie waived his right to a competency hearing by pleading guilty.  Precedent does not support this position.  The United States Supreme Court has stated unequivocally that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); *Sanders v. State*, 9 So. 3d

1132, 1135 (Miss. 2009). The Supreme Court found it unconstitutional to deprive a criminal defendant of a competency hearing where competency is at issue. ***Pate***, 383 U.S. at 385. In that case, the defendant raised the issues of competency to stand trial and insanity, but the trial court determined a hearing on these matters was unnecessary because the State introduced an expert's report finding Robinson competent to stand trial. ***Id.*** at 376, 384.

¶27.    On appeal, the prosecution in ***Pate***, like the State and dissent here, argued that because Robinson failed to object before the trial court, the issue was waived. ***Id.*** at 384. The Supreme Court rejected that argument, finding "Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial[.]" ***Id.*** at 386. The Supreme Court also found that, while Robinson's demeanor before the trial court was relevant to determining his competency, "it cannot be relied upon to dispense with a hearing on that very issue." ***Id.*** (citing ***Bishop v. United States***, 350 U.S. 961, 76 S. Ct. 440, 100 L. Ed. 835 (1956)). Accordingly, the Supreme Court found that, because Robinson raised a legitimate concern regarding his competency to stand trial, it was reversible error not to hold a hearing on the same, despite the lack of a contemporaneous objection. *See **id.*** at 384-387. Consequently, the State's and the dissent's arguments are without merit. *See **id.***

¶28.    Moreover, this Court also has rejected this argument. In ***Sanders v. State***, a case in which the Court cited ***Pate*** approvingly, the majority held that, where a competency evaluation is ordered, the trial court "'shall conduct a hearing to determine if the defendant is competent' and . . . 'shall make the finding a matter of record.'" ***Sanders***, 9 So. 3d at 1136 (quoting URCCC 9.06). Accordingly, the Court found where there is no hearing and the

record fails to sufficiently demonstrate competency to stand trial, this is reversible error. *Id.* The dissent in *Sanders*, however, made the same argument as the dissent here makes, specifically, that failure to make a contemporaneous objection at trial waives this issue. *Id.* at 1142. A majority of this Court rejected that view, and as the Court previously has ruled on this very issue, we decline to deviate from the holding in *Sanders*.

¶29.   We also note the dissent relies considerably on Dr. Lott's report. Here, Hollie argues on appeal that Dr. Lott's opinion that he was competent to stand trial failed to consider Hollie's taped confession, and that Dr. Lott did not have Hollie's full medical record. Dr. Lott's findings, however, were never introduced into evidence prior to the court accepting Hollie's guilty plea. Moreover, even if Dr. Lott's report is considered, the United States Supreme Court has held that such testimony is "some evidence of [a defendant's] ability to assist in his defense," but alone it is not dispositive of the issue. *Pate*, 383 U.S. at 386.

¶30.   Accordingly, for the reasons discussed above, we reverse Hollie's conviction of capital murder and vacate his sentence of death. The trial court judge ordered a mental evaluation but never conducted a hearing on the matter. This is reversible error, and we now remand this case to the trial court to determine Hollie's competence to stand trial. *See Smith*, 149 So. 3d at 1035; Miss. Code Ann. § 99-19-105(6) (Supp. 2014) (requiring the Court to review the validity of a death sentence and factual substantiation of the verdict). And, as this Court provided in *Smith*,  Hollie must be "retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06."  *Smith*, 149 So. 3d at 1035.

### B. Armed-Robbery Conviction and Sentence

¶31. This Court has a statutory duty, under Section 99-19-105(3)(b) and Section 99-19-105(6) to conduct an inquiry into the evidentiary support and validity of any prior conviction determined to be an aggravating factor. *See* Miss. Code Ann. § 99-19-105(3) (Supp. 2014); Miss. Code Ann. § 99-19-105(6) (Supp. 2014). This Court has interpreted this mandate to require our courts to make a determination that the record of the prior conviction is accurate and the defendant to be sentenced is indeed the person who was previously convicted. *Nixon v. State*, 533 So. 2d 1078, 1099 (Miss. 1987), *overruled on other grounds by Wharton v. State*, 734 So. 2d 985 (Miss. 1998); *see Phillips v. State*, 421 So. 2d 476, 481 (Miss. 1982) (providing the same for habitual-offender enhancements and noting that trial courts are not required to relitigate the prior conviction). The Court "is not required to go beyond the face of the prior convictions . . . . '[I]f, on its face, the conviction makes a proper showing that a defendant's prior plea of guilty was both knowing and voluntary, that conviction may be used for the enhancement of the defendant's punishment . . . .'" *Nixon*, 533 So. 2d at 1099 (quoting *Phillips*, 421 So. 2d at 481); *Jackson v. State*, 684 So. 2d 1213, 1236 (Miss. 1996) (providing courts may look to the face of the prior conviction to determine validity and need not "retry all prior convictions"); *see also Culberson v. State*, 612 So. 2d 342, 344 (Miss. 1992) (providing that, on a motion for post-conviction relief, an assault upon a prior conviction used as an aggravating factor should be conducted in a separate proceeding apart from the capital-murder, post-conviction proceeding).

¶32. Therefore, as a general rule, this Court will not inquire into the validity of a prior conviction used as an aggravating circumstance if it appears valid on its face. Here, however,

circumstances dictate we examine Hollie's armed-robbery conviction with a higher level of scrutiny. This is supported by our statutory obligation to ensure Hollie's death sentence is valid – if the armed-robbery conviction, the only aggravator the jury found, is vacated, so too must be Hollie's death sentence. And, as a practical matter, this is an efficient use of judicial resources.

¶33.    The record before us today contains Hollie's murder conviction and sentence and also that of his armed robbery of Patel. Hollie raises a nonfrivolous allegation that he lacked the competence to plead guilty to the armed robbery, the same allegation he raises as to his capital-murder conviction and sentence. The order for the competency evaluation was for both Hollie's capital-murder charge and his armed-robbery charge. All of the armed-robbery and capital-murder proceedings, including the plea hearings and sentencing, were conducted concurrently.

¶34.    Accordingly, because there is a credible concern about the validity of the prior conviction used as an aggravating factor, the Court has before it an adequate record of that prior conviction, and the Court is required by statute to ensure the validity of the death sentence, this Court will undertake a review of Hollie's prior armed robbery that goes beyond the mere face of the conviction. *See* Miss. Code Ann. § 99-19-105(6) (Supp. 2014); *see also* **Gregg v. Georgia**, 428 U.S. 153, 167, 198, 206, 96 S. Ct. 2909, 2922, 2937, 2941, 49 L. Ed. 2d 859 (1976) (affirming death sentence in part because the Georgia statute, like Mississippi's, required the Georgia Supreme Court to review the jury's findings regarding aggravating factors, including prior convictions); **Gillett v. State**, 56 So. 3d 469, 506-07

15

(Miss. 2010) (analyzing defendant's prior conviction used as an aggravating factor to determine if the conviction was for a violent felony); ***Evans v. State***, 725 So. 2d 613, 684 (Miss. 1997) (discussing whether a plea of *nolo contendere* qualified as a prior conviction of a violent felony for purposes of an aggravating circumstance); ***Phillips***, 421 So. 2d at 481; ***Nixon***, 533 So. 2d at 1099; ***Jackson v. State***, 684 So. 2d at 1236.

¶35. As noted above, the trial court ordered a mental evaluation of Hollie regarding his armed-robbery charge. The evaluation was conducted, but no hearing was held. Nevertheless, the trial court accepted Hollie's guilty plea to armed robbery, which subsequently was used as the aggravating factor in his death-penalty sentencing phase. Ordering the mental evaluation, but failing to hold the mandatory hearing on the matter is reversible error. ***Smith***, 149 So. 3d at 1035. As a result, we reverse Hollie's conviction for armed robbery as well and vacate that sentence. This case is remanded to the trial court to determine Hollie's competence to stand trial. *See **Smith***, 149 So. 3d at 1035; Miss. Code Ann. § 99-19-105(6) (Supp. 2014).

## CONCLUSION

¶36. For the reasons discussed above, the Court vacates Hollie's guilty pleas to armed robbery and capital murder, reverses his convictions, vacates his sentences, and remands this matter to the trial court for a mental evaluation and competency hearing under Rule 9.06. If the trial court finds Hollie competent, it shall try Hollie on both charges. If the trial court finds that Hollie is incompetent, it shall order Hollie committed to the Mississippi State Hospital or another appropriate mental health facility in accordance with Rule 9.06.

¶37. **REVERSED, VACATED AND REMANDED.**

**DICKINSON, P.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J.; KITCHENS, J., JOINS IN PART. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., AND KING, J. LAMAR, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ.; DICKINSON, P.J., JOINS IN PART. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**DICKINSON, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶38. For the reasons stated in the majority's decision, I agree we must vacate Hollie's guilty plea and death sentence for capital murder and remand for a competency hearing. I also agree with the majority that we must vacate Hollie's armed-robbery guilty plea because the issue of the requirement of a competency hearing at the time of that trial and conviction has been briefed and argued by the State, and this Court necessarily has determined that the failure of the trial court to conduct a competency hearing invalidates that conviction as an aggravating factor in this death-penalty case.

¶39. It is true that the armed-robbery case is not before us on a direct appeal. But that conviction is before us and, in my view, it would be a waste of time and judicial resources to force that conviction to come back here on a habeas corpus petition which most certainly would be filed by Hollie's current counsel, bearing in mind that, while defendants generally do enjoy the privilege of waiving issues and appeals, that rule does not apply to the incompetent.

17

¶40. Section 99-19-101 requires us to consider whether the State proved an aggravating factor in the sentencing proceeding of the case that is before us.[4] On that point, I join Justice Kitchens's view that the State did not prove that Hollie was previously convicted of armed robbery because no judgment of conviction was entered after Hollie pleaded guilty to that charge.

¶41. I would add, however, that the State failed to prove this aggravating factor for a second reason. Even if Hollie was convicted of armed robbery, he was not *previously* convicted, because his pleas for armed robbery and capital murder were entered in the same hearing. In *Jones v. State*, we discussed the timing requirement to be "previously convicted" within the meaning of the statutory aggravating factor.[5] We concluded that "the legislature intended to relate the word 'previously' to the time of trial."[6]

¶42. Here, there was no trial for capital murder. Instead, Hollie pleaded guilty. And he did so on the same day that he pleaded guilty to the armed robbery that was used as the prior violent conviction. So, even if Hollie's guilty plea constituted a conviction, it was not a previous one which could satisfy the language of the capital-sentencing statute, and I agree that double jeopardy precludes the State from seeking a second death sentence if Hollie is found competent on remand.

**WALLER, C.J., AND KING, J., JOIN THIS OPINION. KITCHENS, J., JOINS THIS OPINION IN PART.**

---

[4] Miss. Code Ann. § 99-19-105(3)(c) (Rev. 2007).

[5] *Jones v. State*, 381 So. 2d 983, 994 (Miss. 1980).

[6] *Id.*

18

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

¶43.    I agree with the majority that Erik Hollie's guilty pleas, convictions, and sentences should be reversed and the case should be remanded.  Because jeopardy attached to the sentencing portion of Hollie's trial, the State is prohibited from seeking the death penalty on remand.  I therefore concur specially.

> **A. The State presented insufficient evidence during the sentencing phase that Hollie previously had been convicted of a felony involving the use or threat of violence.**

¶44.    Under Section 99-19-105 of the Mississippi Code, this Court must review a death sentence to determine "[w]hether the evidence supports the jury's . . . finding of a statutory aggravating circumstance as enumerated in Section 99-19-101."  Miss. Code Ann. § 99-19-105(3)(b) (Rev. 2007).  Of relevance, Section 99-19-101 provides the following aggravating circumstance: "[t]he defendant was previously *convicted* of another capital offense or of a felony involving the use or threat of violence to the person." Miss. Code. Ann. §  99-19-101(5)(b) (Rev. 2007) (emphasis added).

¶45.    On January 10, 2010, Hollie pled guilty to the September 6, 2009, armed robbery of Lalit Patel.  During the course of the plea hearing, the trial judge found that there was a factual basis to support the armed robbery charge, accepted Hollie's guilty plea, and adjudicated him guilty of armed robbery.  At the same time the trial court accepted Hollie's guilty plea for the armed robbery, it also accepted his guilty plea on the capital murder charge. At that time, the trial court did not sentence Hollie on the armed robbery charge and it did not enter a judgment of conviction on its minutes.  On March 12, 2010, the trial court

19

placed the transcript of the guilty plea hearing into the court file. On March 16, 2010, the trial court conducted Hollie's sentencing trial for a jury to determine whether he should be sentenced to death on the capital murder charge. The State argued that Hollie deserved the death penalty on the basis of two aggravating factors: (1) that Hollie previously had been convicted of a felony involving the threat or use of violence and (2) that the capital murder was committed during the commission of a felony. The sole evidence adduced by the prosecution in support of the allegation that Hollie previously had been convicted of a violent felony was the transcript of the plea hearing during which Hollie had pled guilty to the September 6, 2009, armed robbery. When the case was submitted to the jury, the trial court gave the jury the following instruction:

> Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
>
> (1) Whether the defendant has been previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.
>
> (2) Whether the capital offense was committed while the defendant was engaged in the commission of a robbery.

The jury determined that Hollie should receive the death penalty. The jury based its verdict in support of Hollie's death sentence upon but one of the potential aggravating circumstances: the "prior violent felony conviction" aggravator. According to the jury's verdict:

> Next, we, the jury, unanimously find that the aggravating circumstances of (list or itemize all of the aggravating circumstances presented in section B of this instruction) which you unanimously agree existed in this case beyond a reasonable doubt.

> Mr. Hollie pled guilty to armed robbery on November the 6th, 2009. Incident occurred on September 6th, 2009.

It was not until after the jury had rendered its decision that Hollie should be sentenced to death that the trial court entered a sentencing order and judgment of conviction on Hollie's September 6, 2009, armed robbery charge.

¶46.   The plain language of Section 99-19-101 requires that "[t]he defendant was previously *convicted* . . . of a felony involving the use or threat of violence to the person."   Miss. Code. Ann. §  99-19-101(5)(b) (emphasis added).   Here,  the jury found that Hollie had "pled guilty" to armed robbery. This might be considered a harmless error of form but for the fact that the State merely had adduced evidence that Hollie had *pled guilty* to armed robbery but not that he had been *convicted* of that charge.  In fact, at the point in time when the jury announced its verdict, Hollie had not been convicted of armed robbery.

¶47.   This Court's interpretation of the term *conviction* in Section 99-19-101 is governed by the rule of lenity. The rule of lenity reflects a well-established rule "that penal statutes are to be interpreted strictly against the state and construed liberally in favor of the accused." *McLamb v. State*, 456 So. 2d 743, 745 (Miss. 1984).  The rule of lenity "reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of due process." *Dunn v. United States*, 442 U.S. 100, 112, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979); *Watts v. State*, 733 So. 2d 214, 240 (Miss. 1999).  Moreover, because "death undeniably is different," we recognize that "procedural niceties give way to the search for substantial justice." *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991). Under our heightened standard of review in death penalty cases, "*all doubts* are to be resolved in favor

21

of the accused." ***Chamberlin v. State***, 989 So. 2d 320, 330 (Miss. 2008) (citing ***Lynch v. State***, 951 So. 2d 549, 555 (Miss. 2007)) (emphasis added).

¶48.    We have held that "nothing less than a final judgment, conclusively establishing guilt, will satisfy the meaning of the word 'conviction.'" ***Murphree v. Hudnall***, 278 So. 2d 427, 428 (Miss. 1973) (citing ***City of Boston v. Santosuosso***, 307 Mass. 302, 30 N.E.2d 278 (1940)); *accord* ***Keithler v. State***, 18 Miss. 192, 236 (1848) ("Judgment amounts to conviction . . . . We cannot doubt but what the legislature used the word 'conviction' in its broadest sense, as one under judgment."). "This Court . . . has interpreted the word 'conviction' to require a *sentence in addition to judgment*."***Barrett v. State***, 670 So. 2d 20, n.1 (Miss. 1995) (citing ***Lang v. State***, 238 Miss. 677, 680, 119 So. 2d 608 (1960)) (emphasis added). Moreover, it is well established that a circuit court can speak only through its minutes. ***Oliver v. Miles***, 144 Miss. 852, 110 So. 666, 667 (1926). Thus, in order for the circuit court's intention to become a final judgment, it must be entered formally into the minutes of the court. *See* ***Williams v. State***, 125 Miss. 347, 87 So. 672, 672-73 (Miss. 1921). Given that a "conviction" requires proof of a final judgment and a sentence entered into the circuit court's minutes, a "plea of guilty alone does not qualify as conviction." ***Barrett***, 670 So. 2d at 24; *accord* ***McIlwain v. State***, 700 So. 2d 586, 589-90 (Miss. 1997) ("[T]he introduction of the . . . entry of guilty plea form is irrelevant to the proof of the prior conviction").

¶49.    When the sentencing trial for Hollie's capital murder charge commenced, Hollie had pled guilty to armed robbery. The trial court had not entered into its minutes a final judgment

22

against Hollie on the armed robbery charge, and the trial court had not sentenced Hollie on that charge. Hollie therefore had not been *convicted* pursuant to Mississippi law. Moreover, the State introduced Hollie's plea hearing transcript into evidence as proof that he previously had been convicted of a felony involving the use or threat of violence. Because evidence of a guilty plea alone does not qualify as a conviction, the State did not provide sufficient evidence to support the sole aggravating factor for Hollie's death sentence. *See Barrett*, 670 So. 2d at 24.

**B. The Mississippi Constitution's Double Jeopardy Clause and Mississippi case law prohibit the State from seeking the death penalty on remand.**

¶50. Article 3, Section 22, of the Mississippi Constitution provides, "No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22. Adhering to the Mississippi Constitution, this Court has held that an habitual offender's sentencing hearing, as a trial on the sentence, constitutes jeopardy; therefore, when a defendant's sentence "has been overturned due to a failure of proof at trial, . . . the prosecution cannot complain of prejudice." *DeBussi v. State*, 453 So. 2d 1030 (Miss. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)), *superseded in part on other grounds by* M.R.E. 9.01, *as recognized in Cox v. State*, 586 So. 2d 761, 765 (Miss. 1991); *see also Bullington v. Missouri*, 451 U.S. 430, 446, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981) ("Because the sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him, with respect to the death

23

penalty, at his retrial."). Furthermore, this Court expressly has rejected differentiating between the guilt phase of a trial and a sentencing phase of a trial for the purpose of the attachment of jeopardy. *See DeBussi v. State*, 453 So. 2d 1030 (Miss. 1984). Given that this Court has held that jeopardy attaches to sentencing hearings for the purpose of habitual offender sentencing, there is no rational reason to hold that sentencing hearings in death penalty cases are not similarly protected by the Mississippi Constitution's prohibition against double jeopardy. *Id.* at 1033 ("Our habitual offender sentencing procedure resembles in all relevant respects the sentencing phase of capital crimes. A separate trial is conducted on the sentencing issue. . . . The state is required to prove the defendant guilty of additional facts which justify the sentence sought to be imposed. . . . The state's burden of proof is beyond a reasonable doubt.") (internal citations omitted); *accord* **Bullington**, 451 U.S. at 446 (extending double jeopardy protection under the U.S. Constitution to a jury's decision not to sentence a criminal defendant to the death penalty).

¶51. In *Grayer v. State*, 120 So. 3d 964 (Miss. 2013), the accused was indicted as an habitual offender under Mississippi Code Section 99-19-81, which required proof that he previously had been convicted of two prior felonies. *Id.* at 967. After a jury had found Grayer guilty of a burglary charge, the trial court conducted a sentencing hearing to determine whether he should be sentenced as an habitual offender. *Id.* After the sentencing hearing had commenced, the State offered to recite the nature of the previous convictions, and the State's counsel also informed the trial court that it had copies of the certified sentencing orders. *Id.* The court directed the State to recite Grayer's previous convictions, and the State's counsel

24

complied. The trial judge asked whether the certified sentencing orders reflected Grayer's previous convictions and whether the sentencing orders had been provided to defense counsel. *Id.* The trial judge then stated, "I see what you have contained in your hands in the indictment. So there's no need for you to present them to the court at this time." *Id.* The trial judge ruled that Grayer was an habitual offender and sentenced him to the maximum term of imprisonment for burglary of a building. *Id.* Other than the indictment itself and the State's verbal recitation of Grayer's previous convictions, the record contained no evidence to support Grayer's status as an habitual offender. *Id.*

¶52. On appeal, Grayer argued that the State had failed to prove his previous convictions with competent evidence. *Id.* at 969. This Court agreed, holding that the "best evidence of a conviction is the judgment of conviction." *Id.* (quoting *McIlwain*, 700 So. 2d at 589). The Court found that "the circuit court committed error, rising to the level of plain error, by sentencing Grayer as a habitual offender without evidence of his prior convictions." *Id.*

¶53. The Court further held that "the State is not entitled to a second chance to prove a defendant's habitual-offender status on remand, because that would violate the prohibition against double jeopardy under the Mississippi Constitution." *Id.* at 969-70. Relying on this Court's decision in *Ellis v. State*, 520 So. 2d 495 (Miss. 1988), the Court held that:

> [A]n habitual offender's sentencing hearing, as a trial on the sentence, constitutes jeopardy; therefore, when a defendant's conviction has been overturned due to a failure of proof at trial, . . . the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.

*Grayer*, 120 So. 3d at 970 (quoting *Ellis*, 520 So. 2d at 496).

¶54.    Taking into consideration this Court's interpretation of the Mississippi Constitution's Double Jeopardy Clause, it cannot reasonably be argued that the State can pursue a death penalty sentence on remand.  The State argued that Hollie deserved the death penalty on the basis of two aggravating factors: that Hollie previously had been convicted of a felony involving the threat or use of violence and that the capital murder was committed during the commission of a felony.  In its instructions to the jury, the trial court required that the jury "itemize *all* of the aggravating circumstances presented . . . which you *unanimously agree existed in this case beyond a reasonable doubt*."  The sole aggravator the jury found beyond a reasonable doubt was that Hollie previously had been convicted of a felony involving the threat or use of violence.  It is well established that the State did not provide sufficient proof of this conviction, because Hollie had not yet been convicted of armed robbery, and all the State offered in support of this aggravator was the transcript of Hollie's guilty plea.  Because the jury did not find that the capital murder had been committed during the course of a felony, Hollie would have received a life sentence, inasmuch as the only aggravator found by the jury was insufficient. Instead, the jury found that Hollie should be sentenced to death, based on an aggravator that was not supported by sufficient evidence.[7]  It would be unfair and

_____

[7] This case is distinguishable from our decision in **Taylor v. State**, 672 So. 2d 1246 (Miss. 1996), in which this Court found that three out of the five aggravating factors found by the jury were not supported by sufficient evidence.  **Id.** at 1274-75.  In **Taylor**, the prosecution had adduced sufficient evidence of two aggravating factors.  **Id.** at 1274-75. Thus, the prosecution had proved beyond a reasonable doubt that Taylor deserved a death sentence.  Here, the sole aggravating factor found by the jury was not supported by sufficient evidence.  In other words, the prosecution has not proved beyond a reasonable doubt that Hollie deserved a death sentence. Thus, although we remanded **Taylor** for resentencing, that is not an appropriate remedy in this case, because resentencing would violate Hollie's constitutional rights.

26

unconstitutional to allow the State to pursue a death sentence, when it already has had the opportunity to prove its case and has failed to do so. *Grayer*, 120 So. 3d at 670.

## CONCLUSION

¶55.   In sum, I specially concur because the Double Jeopardy Clause of the Mississippi Constitution prohibits the State's seeking a death sentence on remand.

**WALLER, C.J., DICKINSON, P.J., AND KING., J., JOIN THIS OPINION.**

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶56.   The result would be no different, whether this Court follows the well-established legal principle of waiver, or if this Court applies a proper plain-error analysis. Either endeavor results in the same outcome–the claimed error was harmless and did not result in a manifest miscarriage of justice. Our goal is to insure that Hollie had a fair trial. Fair trials are measured by a court's confidence in their outcome. Based on the specific record before us, a manifest miscarriage of justice which prejudiced the outcome cannot be identified. Even if error is shown by the trial court's failure to conduct a separate Rule 9.06 hearing, it is not reversible error in this case. See M.R.E. 906.  The contents of the record and our law dispel such a conclusion.

¶57.   Trial courts should respect the guarantees of our Constitution and apply our procedural and evidentiary rules. When a trial court fails, the risk of reversal is ever-present. However, the procedural error claimed in this case does not warrant a reversal. I would hold the claimed error is harmless beyond a reasonable doubt, and I would affirm the convictions and sentences of the Copiah County Circuit Court.

¶58. This record reveals that on January 11, 2010, Hollie pleaded guilty to the murder of Denmon Ward and the armed robbery of Lalit Patel. On March 16, 2010, Hollie was sentenced. Hollie waited until March 22, 2012, more than two years following his conviction and sentence, to complain. Hollie failed to object at trial, at sentencing, or by timely filing any post-trial motions. Hollie did not appeal his conviction and/or sentence. Hollie never sought remedy through post-conviction proceedings. It was not until this Court's *sua sponte* review of Hollie's death sentence that Hollie's present counsel claims Hollie was denied a fundamental constitutional right, but he makes no claim of ineffective assistance of counsel.[8]

¶59. In ***Chapman v. California***, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the United States Supreme Court rejected the argument that errors of constitutional dimension mandate a reversal of criminal convictions.[9] Since ***Chapman***, that Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." ***Delaware v. Van Arsdall***, 475 U.S. 673, 681, 106 S.

---

[8] On January 2, 2014, the State filed a Motion to Set Execution Date with this Court. On January 6, 2014, this Court ordered Hollie to file a response to the State's motion. The Office of the State Public Defender, Capital Defense Counsel Division, filed a response on behalf of Hollie on January 10, 2014. Hollie argued that his sentence had never been reviewed by this Court pursuant to Section 99-19-105. This Court denied the State's motion and held that it would conduct a review of Hollie's sentence as mandated by Section 99-19-105.

[9] Decided one year after ***Pate v. Robinson***, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), this is a case relied upon heavily by the majority opinion. ***Pate*** is patently distinguishable, as will be more fully shown *infra*.

Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986). *See also* **Rose v. Clark**, 478 U.S. 570, 576-77, 106 S. Ct. 3101, 3105, 92 L. Ed. 2d 460 (1986). The record in this case supports the same result.

¶60.  Hollie failed to lodge a contemporaneous objection when the trial court accepted his guilty plea without conducting a competency hearing. "If no contemporaneous objection is made, the error, if any is waived." **Batiste v. State**, 121 So. 3d 808, 834 (Miss. 2013); *cert. denied*, 134 S. Ct. 2287, 189 L. Ed. 2d 178 (2014) (quoting **Walker v. State**, 913 So. 2d 198, 227 (Miss. 2005); **Foster v. State**, 639 So. 2d 1263, 1270 (Miss. 1994)). "A waiver is an intentional relinquishment of a known right or privilege." **Johnson v. Zerbst**, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938).  It is well-established that a defendant may waive numerous constitutional rights. *See* **Patton v. State**, 34 So. 3d 563, 564-65 (Miss. 2010) ("As is true with most constitutional rights, the Sixth Amendment right to counsel can be waived."); **Byrom v. State**, 927 So. 2d 709, 722 (Miss. 2006) (a defendant may waive his right to a jury during sentencing); **Greenlee v. State**, 725 So. 2d 816, 827 (Miss. 1998) (a defendant subject to custodial interrogation may waive certain constitutional rights and render any resulting confession admissible at trial); **Coverson v. State**, 617 So. 2d 642, 647 (Miss. 1993) (a defendant may waive his **Miranda**[10] rights). Additionally, rule violations may be waived. *See* **Magee v. State**, 124 So. 3d 64, 70 (Miss. 2013) (failure to request a continuance or mistrial when faced with an undisclosed witness or evidence results in waiver of the rule violation); **Shell v. State**, 554 So. 2d 887, 894-95 (Miss. 1989), *rev'd in part on other grounds*, **Shell v. Mississippi**, 498 U.S. 1, 111 S. Ct. 313, 112 L. Ed. 2d 1 (1990) (Mississippi

---

[10] **Miranda v. Arizona**, 384 U.S. 436, 545, 86 S. Ct. 1602, 1665, 16 L. Ed. 2d 694 (1966).

Rules of Evidence 504 (husband-wife privilege) and 601 (general rule of competency) can be waived by parties' respective actions).

¶61. Rule 9.06 of the Uniform Rules of Circuit and County Court Practice provides that once a trial court orders a defendant to submit to a mental examination, the trial court is to "conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial." URCCC 9.06.

¶62. Hollie requested a mental examination, and the trial court ordered an examination. On the same day the mental examination was ordered, the trial court granted the parties' *ore tenus* motion to reset the matter, setting dates for an omnibus hearing and trial. The omnibus hearing was scheduled for Monday, January 11, 2010, and the trial was set for Tuesday, March 8, 2010.

¶63. Prior to the date the omnibus hearing was scheduled, Dr. Criss Lott determined Hollie was competent. The trial court, the prosecutor, Hollie, and Hollie's attorneys all were made aware of Dr. Lott's findings. Hollie offered no evidence on January 11, 2010 (the date set for an omnibus hearing), to the contrary. The record reveals that no separate competency hearing was conducted in open court for us to review, yet we are not left clueless on the issue. Clear evidence in the record reveals that Hollie was, in fact, competent. Additionally, this Court has Dr. Lott's report and the record of Hollie's plea colloquy.

¶64. Rather than contesting competency on the date of the scheduled omnibus hearing, Hollie entered guilty pleas for murder and armed robbery. The trial court specifically asked

Hollie's counsel if there was any reason why the guilty pleas should not be accepted, and both emphatically responded "no." The trial court made a finding at the plea colloquy that Hollie "knowingly and intelligently waived his constitutional rights" and "freely and voluntarily entered a plea of guilty" as to the counts of armed robbery and capital murder. Based upon all of the evidence presented to the trial court in this case, including Dr. Lott's report and testimony from Hollie, the trial court accepted Hollie's guilty plea. No error was claimed at trial and is thus waived. *Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007) (failure to raise a contemporaneous objection waives the issue on appeal).

¶65.    Were we to evade the law of waiver, only a plain-error analysis would allow an examination of the now-claimed error.

> Under the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right. For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Burdette v. State*, 110 So. 3d 296, 303 (Miss. 2013). *See also* *Conners v. State*, 92 So. 3d 676, 684 (Miss. 2012) (After determining a constitutional right was violated, the Court concluded that "no manifest miscarriage of justice resulted from the error, which was harmless.").

¶66.    After Hollie turned himself in to local authorities and confessed to the armed robbery of Patel and the murder of Ward, Hollie's counsel filed a motion for a mental examination. This motion was filed simultaneously with more than twenty other pretrial motions. On November 23, 2009, the trial court ordered a mental examination be conducted by Dr. Lott. Dr. Lott was instructed to provide the court and attorneys with a written report no later than

ten days from the date of the evaluation. The trial judge also ordered that an omnibus hearing would be held on January 11, 2010, and set Hollie's trials for March 2010. All parties and counsel appeared on January 11, 2010, but rather than seek a hearing on Hollie's competency, Hollie offered a petition to plea, and Hollie's attorneys, in open court, advised the trial judge there was no impediment to entry of the pleas.

¶67.    This record reveals that Hollie was evaluated by Dr. Lott on December 20, 2009. Pursuant to the court's order, Dr. Lott's report was prepared on December 29, 2009, and was provided to the trial court, the district attorney's office, and Hollie's attorneys. Dr. Lott opined that Hollie, who consented to the exam, had no difficulty comprehending the nonconfidential nature of the exam and the fact that the court and all attorneys would receive a copy of his final report. Dr. Lott found that Hollie had no difficulty in communicating with him during the exam. Hollie was able to restate his rights and stated that he fully understood the charges against him and the maximum penalties that he could receive. Dr. Lott noted that Hollie had worked for several years with seismographic companies out of Texas and New York. "Mr. Hollie was alert, attentive and responded promptly to questions. He was precisely oriented. His speech was appropriate and at all times relevant and goal-directed. There was no indication of any disorganization of his thoughts, including pressured speech, flight of ideas, or loosening of association." Hollie tested at a high-average to borderline range on intellectual tests. After administering the MMPI-2, Dr. Lott found that Hollie was "exaggerating his psychological problems," and was unable to make any clinical interpretation.

¶68.    When asked by Dr. Lott about the two crimes that he committed, Hollie stated that "he 'went to the store and got $30.00 of gas and drove off. I beat the shit out of the guy and drove off. We had words the day before about religion. I went back to kick his ass.'" He also stated that "'I was hiding from the cops. I walked in there (pawn shop) and was looking around, looking at guns. I asked the guy what kind of deal he'd cut on these guns and he wouldn't cut no deal. He called the police and I shot him.'"

¶69.    Dr. Lott offered the following findings as to Hollie's competency and sanity:

> It is my opinion, to a reasonable degree of psychological certainty, that Mr. Hollie has the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding and he has a good factual and rational understanding of the nature and object of the legal proceedings against him.
>
> . . .
>
> It is my opinion, to a reasonable degree of psychological certainty, that Mr. Hollie was not suffering from a severe mental illness at the time of the alleged offenses.

Dr. Lott opined that no further evaluation was needed and that Hollie was competent to participate in the legal proceedings against him, which he did.

¶70.    This record further reveals that on January 11, 2010, the date of an omnibus hearing, Hollie pleaded guilty to murder and armed robbery. At his hearing, Hollie stated that he was mentally competent. Additionally, he stated, under oath, that at the time of the crimes and at present, he was not "suffering from any mental illness." Hollie listed out the elements of each crime and each fact of the crime that he believed to be true. He further stated that, "I offer my plea of 'Guilty' freely and voluntarily and of my own accord and with full understanding of

33

all the matters set forth in the indictment(s) herein and in this Petition, and this plea is with the advice and consent of my lawyer."

¶71. At the hearing, Hollie stated that he fully understood his petitions to plead guilty to both counts and that the content of the petitions was true and correct. All of his rights were explained to him by the trial judge, and he stated that he understood he was waiving the State's requirement to prove each charge beyond a reasonable doubt (which would include competency, had it been contested). He stated that he was satisfied with the representation he had received from his attorneys and that he had not experienced any problems with either attorney. Hollie informed the trial judge that he was not presently undergoing any type of mental treatment. Hollie stated that he was pleading guilty because he was guilty. Not an iota or tittle of evidence in the record suggests otherwise.

¶72. Dr. Lott's report, which was received by the attorneys and trial judge before the hearing, was filed and made part of the court record on January 11, 2010, the date of the hearing, without objection. Hollie offered no proof to dispute Dr. Lott's findings or opinions; nor did he seek a ruling on competency. Hollie's attorneys both were questioned by the trial judge as to whether there was any reason Hollie's guilty pleas should not be accepted. Both responded in the negative. Neither attorney asked for a separate hearing on the issue of competency. If constitutional rights can be waived, cannot procedural rules also be waived?

¶73. There is nothing to suggest or even hint that the trial court did not receive, read, and cause Dr. Lott's report to be part of the official court record. In addition to the expert's uncontested report, the trial judge had the opportunity to observe Hollie and question him

during the hearing on January 11, 2010. The trial court found that "Mr. Hollie knowingly and intelligently waived his constitutional rights, he has freely and voluntarily entered a plea of guilty in this cause, I find that there is a factual basis to support the charge and I accept his plea of guilty and adjudicate he is guilty of armed robbery. . . [and] capital murder." Such a finding is indicative of a finding of competency, for an incompetent defendant cannot knowingly and intelligently waive his rights.

¶74.    Two months later, at Hollie's sentencing, Hollie's acknowledgment of guilt remained unchanged.  During the sentencing trial, Hollie's counsel made the following statement to the trial judge:

> MR. BASS:  . . . For the record, Your Honor, I am M.A. Bass, Jr., and I represent Erik Wayne Hollie in these proceedings. *And after much discussion with Mr. Hollie*, he has directed me to take some action and not to take certain actions in these proceedings. And to that end, Your Honor, he has signed an affidavit, and that's what I would like to put in the record, Your Honor.

(Emphasis added.) Bass then read Hollie's affidavit into the record:

> Comes now the defendant, **Erik Wayne Hollie**, and files this his Affidavit and would show and aver unto the court the following, to wit:
>
> 1.    I am Erik Wayne Hollie, Defendant in the above styled and numbered cause. I am twenty-five (25) years of age having been born October 1, 1984. . . . I've been incarcerated in the Copiah County Detention Center, Gallman, Mississippi, since September 8, 2009.
>
> 2.    I pled guilty to capital murder on January 11, 2010, in Cause No. 2009-0218; and I pled guilty to armed robbery on January 11, 2010, in Cause No. 2009-219, in the Circuit Court of Copiah County, Mississippi. Both pleas were voluntarily made and freely given of my own accord and with the full understanding of all the matters set forth in the indictments and in my Petitions to enter a plea of guilty to each indictment. The court accepted both Petitions and set sentencing for this date, March 16, 2010.

3. I understand that I may be sentenced to death or life in prison without parole or probation in Cause No. 2009-218, capital murder. I understand that I may be sentenced to life in prison in Cause No. 2009-219, armed robbery.

4. I have instructed my attorney, M.A. Bass, Jr., not to present any mitigating circumstances, mitigating witnesses, or mitigating jury instructions, at the sentencing hearing. He is not to question the jury panel or witnesses for the State, nor is he to call any witnesses in my favor. I have instructed my attorney not to present any opening statement or remarks or any closing statement or remarks on my behalf. I may address the jury as this is my constitutional right.

5. I believe my lawyer is competent and has done all that anyone could do to counsel and assist me, and I am fully satisfied with the advice and help my lawyer has given me. I understand that my decision is against the advice and consent of my attorney.

6. I am of sound mind, and I have been declared, pursuant to the forensic mental evaluation conducted by W. Criss Lott, Ph.D., competent to ". . . understand the charges against him and the possible penalty if convicted, including the death penalty." Said evaluation and findings were made December 20, 2009.

7. I believe my lawyer is fully informed on all matters relating to the sentencing phase of my case. My lawyer has advised me of the nature of the proceedings, and the possible defenses and mitigating evidence that I may produce. I declare that no officer or agent of any branch of government, nor any other person has made any promises or inducements of any kind to me, to reject assistance in this matter. I have not been threatened, mentally or physically forced, intimidated, or coerced in any manner to reject any assistance in this matter.

8. I have been fully apprised of the consequences of my choice, and I am aware of the decision of the Supreme Court of Mississippi, and [its] decision in, Brawner v. State, 947 So.2d 254, (2006), wherein the Court said, "Trial counsel's failure to put on mitigating evidence at . . . murder trial was not ineffective assistance of counsel, as counsel prepared a mitigation case but did not present it based on defendant's wishes, and defendant was fully apprised of the consequences of his choice."

36

I, **Erik Wayne Hollie**, swear and aver, that the matters and facts stated hereinabove, and true and correct as therein stated.

This affidavit was marked as the State's first exhibit (S-1) for identification purposes. Dr. Lott's fifteen-page opinion and report, directed to the trial judge and copied to all other counsel, was marked as the State's second exhibit (S-2) for identification purposes. After the State's closing statement, Hollie made the following statement to the jury: "I ask that you let the Lord deal with me and sentence me to death."

¶75. The majority relies on *Sanders v. State*, 9 So. 3d 1132 (Miss. 2009), *Smith v. State*, 149 So. 3d 1027 (Miss. 2014), and *Pate* to support its finding that, once a mental evaluation is ordered, a competency hearing is mandatory, and if a competency hearing is not conducted, it is reversible error. (Maj. Op. at ¶¶ 20, 25, 26-28). All cases are distinguishable from today's case. In *Sanders*, this Court held that the trial court erred in failing to conduct a competency hearing and remanded the matter for a new trial. *Sanders*, 9 So. 3d at 1139. The Court's decision was based on a record which revealed that: two years prior to the crime, Sanders had suffered a head injury, which resulted in brain damage; he was committed to a psychiatric ward and prescribed numerous psychotropic drugs; Sanders's motion for mental evaluation was granted by the trial court, and an exam was conducted by Dr. Mark C. Webb; and finally, Dr. Webb's report was never made part of the official court record and was not made part of Sanders's appeal. *Id.* at 1133-34, 1139. During Sanders's trial, Dr. Webb testified regarding Sanders's sanity at the time of his offense; however, Dr. Webb never provided testimony as to whether Sanders was competent to stand trial. *Id*. at 1137.

¶76. The Court determined that there was no evidence in the record which would indicate that Sanders was competent to stand trial.

> The docket indicates that Dr. Webb did file a report with the trial court. However, the *report* was *not entered into evidence* and was *not part of the record on appeal*. Therefore, *this Court* is *unable to review the report and* Dr. Webb's *opinion*, if any, *as to* Sanders's *competency to stand trial*. . . . At a minimum, there was no definitive testimony or report that determined Sanders competent to stand trial.

*Id.* at 1139 (emphasis added).

¶77. In *Smith*, a mental evaluation was ordered by the trial court; however, no examination occurred, a clearly distinguishable difference. *Smith*, 149 So. 3d at 1029. Smith subsequently pleaded guilty to kidnapping, carjacking, and felony fleeing. *Id.* at 1030. In his second motion for post-conviction relief, Smith argued that the trial court erred by accepting his guilty plea because the court-ordered mental evaluation was never performed. *Id.* Smith attached affidavits from his parents that he "had been institutionalized numerous times for drug addiction and bipolar disorder, and for self-mutilation after he had slashed his arms with a razor. Smith's father additionally stated that Smith had been prescribed drugs for bipolar disorder." *Id.* Hollie makes no such claims.

¶78. The Court of Appeals affirmed the trial court's denial of Smith's petition, finding that "the order for a mental evaluation did not state the reason for the mental evaluation and reasoned that a trial court is empowered to order a mental evaluation to address matters other than competency, such as to support an insanity defense or to generate mitigation evidence for use in sentencing." *Id.* at 1034. This Court noted that the trial court's order was ambiguous "as to whether the mental evaluation was ordered for the purpose of determining Smith's

38

competence to stand trial." *Id.* Additionally, evidence was before the trial court that Smith had mental problems, for Smith stated at his plea hearing that "he had been treated for depression and 'psychosis or something like that,' and was taking medication for those conditions." *Id.* at 1030. This Court held that "Smith presented sufficient evidence supporting the denial of his fundamental right not to be convicted while incompetent to survive the summary dismissal of his motion for PCR." *Id.* at 1035. The Court remanded the case to the trial court for an evidentiary hearing. *Id.*

¶79.   Even more distinguishable is *Pate*. Four witnesses testified at Robinson's trial, revealing that he had a long history of disturbed behavior: he suffered from headaches during his childhood, he believed someone or something was after him, he had a "starey look and seemed to be just a little foamy at the mouth," he attempted to jump from a moving cab on his way to the mental hospital and had to be strapped in a wheelchair due to his violent behavior, he heard voices that threatened him, he saw visions of animals, he was highly nervous, he previously had shot and killed his son and attempted suicide by shooting himself in the head, and he had attempted suicide by jumping into a lagoon. *Pate*, 383 U.S. at 376-383. All four witnesses testified that they believed Robinson to be insane. *Id.* at 383.

¶80.   The Illinois Supreme Court found the evidence presented was not sufficient to warrant a hearing based on Robinson's mental alertness at trial. *Id.* at 385. However, the U.S. Supreme Court reversed, holding that the trial court had ignored the contradictory evidence presented at trial, finding that

> . . . the record shows that counsel throughout the proceedings insisted that Robinson's present sanity was very much in issue. He made a point to elicit

> Mrs. Robinson's opinion of Robinson's "present sanity." And in his argument to the judge, he asserted that Robinson"should be found not guilty and presently insane on the basis of the testimony that we have heard." Moreover, the prosecutor himself suggested at trial that "we should have Dr. Haines'[s] testimony as to his opinion whether this man is sane or insane." With this record we cannot say that Robinson waived the defense of incompetence to stand trial.

*Id.* at 384. It is clear from the *Pate* opinion that the U.S. Supreme Court made an extensive review of the trial record. I do not disagree with the holding in *Pate*; however, I do disagree that the record before us today presents the same set of facts which would result in the reversal of Hollie's convictions. Nothing in the record before us supports overturning Hollie's convictions or sentences.

¶81. The facts of today's case, as evidenced by the record before us, paint a very different picture. Hollie has offered no past history of mental illness. During his evaluation with Dr. Lott, Hollie had no difficulty comprehending all that was asked of him. Hollie was able to articulate fully the crimes he had committed and likewise fully acknowledged an understanding of the charges against him and the penalties he could receive. Dr. Lott's report, which found Hollie was competent, was made a part of the official court record on two separate occasions: the day of the pleas and again by Hollie's own counsel at the sentencing hearing. Significantly, it is available for our review as "part of the record on appeal," unlike in *Sanders*. *See Sanders, 9 So. 3d.* at 1139. Ample evidence is presented in this case for this Court to make a determination that Hollie was competent.

¶82. After a thorough review of the record before this Court, I would find that Hollie waived a separate Rule 9.06 hearing. Finally, the claimed error did not result in a manifest

miscarriage of justice. Hollie's confession, guilty plea, statement to the jury, and Dr. Lott's report all provide overwhelming evidence of guilt, and Hollie has suffered no prejudice.

**LAMAR, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶83. I agree with the majority that Hollie's death sentence must be set aside because of the circuit court's failure to properly address and adjudicate his competence. But I do not agree that Hollie's convictions for capital murder and for armed robbery should be set aside.

¶84. The majority correctly presents the unusual and unprecedented procedural posture of this case. Unlike any other death-penalty case that has come before this Court, this case is *not* before us on direct appeal, but upon a mandatory sentence review initiated by this Court pursuant to Mississippi Code Section 99-19-105, which provides, in pertinent part:

> (1) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the *sentence* shall be reviewed on the record by the Mississippi Supreme Court . . .

> (2) The Mississippi Supreme Court shall consider *the punishment* as well as any errors *enumerated by way of appeal*.

> (3) With regard to the *sentence*, the court shall determine:

>> (a) Whether the *sentence of death* was imposed under the influence of passion, prejudice or any other arbitrary factor;

>> (b) Whether the evidence supports the jury's or judge's finding of a *statutory aggravating circumstance* as enumerated in Section 99-19-101;

>> (c) Whether the *sentence of death* is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant . . .

> . . .

(5) [T]he court, *with regard to review of death sentences*, shall be authorized to:

> (a) *Affirm the sentence of death*;
>
> (b) Reweigh the remaining aggravating circumstances against the mitigating circumstances should one or more of the aggravating circumstances be found to be invalid, and (i) *affirm the sentence of death* or (ii) *hold the error in the sentence phase harmless error and affirm the sentence of death* or (iii) *remand the case for a new sentencing hearing;* or
>
> (c)  Set the sentence aside and remand the case for modification of the sentence to imprisonment for life.

Miss. Code Ann. § 99-19-105 (Rev. 2007) (emphasis added).  Here, Hollie did not file any post-trial motions or a direct appeal.  So his death sentence is the only question before us, and I would stop our analysis there.

¶85.   In short, I do not agree that Hollie's capital-murder conviction is before us, and I certainly do not agree that his armed-robbery conviction—a completely separate charge stemming from a completely separate incident—is before us.  The majority's statement that this Court "has a statutory duty, under Section 99-19-105(3)(b) and Section 99-19-105(6) to conduct an inquiry into the . . . *validity* of any prior conviction determined to be an aggravating factor" is simply incorrect.  Maj. Op. at ¶ 31 (emphasis added).  The statute does not direct this Court to determine the validity of the prior conviction.  Section 99-19-105(3)(b) states only that this Court should determine whether *the evidence supports* the jury's or judge's finding of a statutory aggravating circumstance, and Section 99-19-105(6) states only that this Court should render its decision on the "validity *of the [death] sentence.*"  (Emphasis added.)

¶86. In fact, as the majority correctly points out, this Court repeatedly has said that any assault on a prior conviction must be made in a separate proceeding. Maj. Op. at ¶ 31; *see, e.g.*, ***Culberson v. State***, 612 So. 2d 342, 344 (Miss. 1992). But the majority then ignores this longstanding precedent, stating that, "as a practical matter, this is an efficient use of judicial resources." Maj. Op. at ¶ 32. I note finally that every case cited by the majority to support its reversal of the armed-robbery conviction arises from a direct appeal of a capital-murder conviction. Those cases are in a different procedural posture than the present one.

¶87. I would recognize this Court's limited mandate to review Hollie's death sentence. And even though it may not be "efficient," I would stop our analysis there, and I would reverse Hollie's death sentence and remand this case to the trial court for further proceedings. I therefore respectfully concur in part and dissent in part.

**PIERCE AND COLEMAN, JJ., JOIN THIS OPINION. DICKINSON, P.J., JOINS THIS OPINION IN PART.**